

Proskauer Rose LLP    Eleven Times Square    New York, NY 10036-8299

November 22, 2021

By ECF and Email

Scott C. Levenson
Levenson Law Group
625 West 51st Street
New York, NY 10019

David A. Picon
Member of the Firm
d +1.212.969.3974
f 212.969.2900
dpicon@proskauer.com
www.proskauer.com

Re: *Streamlined Consultants, Inc. v. EBF Holdings*, LLC, Case No. 7:21-cv-9528

Dear Mr. Levenson,

As you know, we are counsel for Defendant EBF Holdings, LLC ("Everest") in the above-referenced action. Section II.A. of Judge Karas's Individual Rules of Practice states "[f]or motions to dismiss in lieu of an answer in fully counseled cases, the movant must send a pre-motion letter to the nonmovant, copy the Court, and file it on the docket." This letter is sent in accordance with this requirement, as Everest intends to move to dismiss Plaintiffs' First Amended Complaint ("FAC," ECF 1-4) in its entirety, as the First Amended Complaint fails to state a claim upon which relief can be granted.

The First Amended Complaint challenges the validity of the agreement between Plaintiff Streamlined Consultants, Inc. ("Streamlined"), the performance of which was guaranteed by co-Plaintiff Moshe Schoenwald, and Defendant Everest (the "Agreement," ECF 1-5). The First Amended Complaint should be dismissed because: (1) Plaintiffs cannot sue for affirmative relief based on allegations of usury; (2) even if allegations of usury could be asserted affirmatively, the claims would fail as a matter of law because the Agreement between the parties is not a loan; (3) the Agreement is neither against public policy nor unconscionable; and (4) Plaintiffs cannot assert a claim for declaratory relief. In short, the First Amended Complaint suffers from the same legal infirmities Justice Bartlett identified when she granted Everest's motion for summary judgment to dismiss the claims against another client of yours, who asserted the same core claims of usury against Everest. *Cavalry LLC v. EBF Holdings, LLC*, Index No. EF-003081-2021, NYSCEF Doc. No. 48 (Sup. Ct. Orange Cty. Oct. 5, 2021).[1] As you must know, there are literally dozens of cases applying New York law holding that revenue based funding agreements, like Everest's here, are purchase and sale agreements and not loans.

---

[1] Justice Bartlett's comment in that opinion, to the effect that your client apparently conducted a "scheme to defraud" Everest and other revenue based financing companies (*id.* at 15-16), appears equally applicable here, since Streamlined, too, accepted a sizable advance and then, after just six weeks, cut off payment abruptly and without explanation. However, in this letter, we focus solely on the defects apparent on the face of the First Amended Complaint.



**(1) Plaintiffs cannot sue for affirmative relief based on allegations of usury**

New York law is settled that corporations and their owners cannot sue for affirmative relief based on allegations of usury, civil or criminal. General Obligations Law § 5-521(1) provides that "[n]o corporation shall hereafter interpose the defense of usury in any action." Nor can usury be asserted as an affirmative claim. *E.g.*, *Paycation Travel, Inc. v. Global Merch. Cash Inc.*, 192 A.D.3d 1040, 1041 (2d Dep't 2021) ("General Obligations Law § 5-521 bars a corporation such as the plaintiff from asserting usury in any action, except in the case of criminal usury as defined in Penal Law § 190.40, and then only as a defense to an action to recover repayment of a loan, and not as the basis for a cause of action asserted by the corporation for affirmative relief"); *Intima-Eighteen, Inc. v. A.H. Schreiber Co.*, 172 A.D.2d 456, 457 (1st Dep't 1991) ("Thus, it is well established that the statute generally proscribes a corporation from using the usury laws either as a defense to payment of an obligation or, affirmatively, to set aside an agreement and recover the usurious premium."). This restriction applies to a corporation's owners or guarantors as well. *Schneider v. Phelps*, 41 N.Y.2d 238, 242 (1977). No matter how it is dressed up, the relief requested here is precluded as a matter of law. *See Scantek Med., Inc. v. Sabella*, 582 F. Supp. 2d 472, 474 (S.D.N.Y. 2008) (dismissing claim for declaratory relief); *Intima-Eighteen*, 172 A.D.2d at 457 (relief sought included order to "set aside" the agreement); *Koenig v. Slazer Enters.*, 2010 N.Y. Misc. Lexis 793, at *12 (Sup. Ct. Rockland Cty. Apr. 1, 2010) (criminal usury provides no basis to declare agreements "void").

**(2) Even if allegations of usury could be asserted affirmatively, the claims would fail as a matter of law because the Agreement between the parties is not a loan**

Courts have repeatedly held that revenue based funding agreements[2] are not loans, but rather agreements providing for the purchase of receivables. *E.g.*, *Womack v. Capital Stack*, 2019 WL 4142740, at *5-7, *7 n.9 (S.D.N.Y. Aug. 30, 2019) (listing 28 decisions rejecting usury challenges to merchant cash advance agreements); *Yellowstone Capital LLC v. Cent. USA Wireless LLC*, 2018 WL 3765121, at *1 (Sup. Ct. Erie Cty. June 25, 2018) ("In no less than thirty-eight (38) recent decisions, New York Courts have determined that the merchant agreements at issue . . . do not constitute loans."). Therefore, they are not subject to the usury laws. *Seidel v. 18 E. 17th St. Owners, Inc.*, 79 N.Y.2d 735, 744 (1992) (citation omitted) ("Usury laws apply only to loans or forbearances, not investments. If the transaction is not a loan, 'there can be no usury, however unconscionable the contract may be.'").

Revenue based funding agreements are not loans because they do not provide for (1) a right of interest on principal, *see, e.g.*, *Womack*, 2019 WL 4142740, at *4 ("the lender must have purposefully loaned money at a usurious interest reserved in some form by the contract"); (2) a fixed term, *see, e.g.*, *Womack*, 2019 WL 4142740, at *4 ("[W]here the effective interest rate is based upon a contingency in the debtor's control, usury laws do not apply."); and (3) an absolute right of repayment, *see, e.g.*, *Colonial Funding Network, Inc. v. Epazz, Inc.*, 252 F. Supp. 3d 274,

---

[2] Also referred to as "merchant cash advance" agreements.



282-83 (S.D.N.Y. 2017) (distinguishing merchant cash advance agreements from loans because only loans have absolute and unconditional payment obligations).  Applying these principles, the Agreement is not a loan.

To begin, Streamlined's payments are based on its receivables, not on a rate of interest on principal.  The Agreement expressly provided that "[t]here is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Purchaser." (Agreement at 2.)  Likewise, the Agreement does not provide an absolute and unconditional right to repayment.  Instead, under the Agreement, if Streamlined's receipts dwindle, its obligation to Everest diminishes accordingly.  In the words of the Agreement, "Purchaser is entering into this Agreement knowing the risks that Seller's business may slow down or fail, and Purchaser assumes these risks . . . ." (Agreement at 2.)  A "quintessential" indicium of a receivables-purchase agreement is that it does not prescribe when payments must be completed.  *K9 Bytes*, 56 Misc. 3d at 817.  Instead, in a receivables-purchase agreement, the payment term is indefinite because payments are "contingent upon [plaintiffs'] actually generating sales and those sales actually resulting in the collection of revenue."  The Agreement has an indefinite payment term because Streamlined's payments are based on its receipts. (Agreement at 1.)

At least two other elements doom any argument the Agreement is a loan.  First, the Agreement contains a reconciliation provision ensuring Streamlined's payments are based on its receivables.  Courts applying New York law have consistently held that receivables-purchase agreements are not loans if they fix an initial daily payment amount that is subject to periodic reconciliation to ensure the merchant's payments do not exceed the amount of purchased receivables.  *See, e.g.*, *K9 Bytes*, *Inc. v. Arch Capital Funding, LLC*, 56 Misc. 3d 807, 816 (Sup. Ct. Westchester Cty. 2017) (noting that "every court that found that [a] transaction was not a loan" cited a similar reconciliation provision).  Second, the Agreement, at Agreement ¶ 3.1, does not make bankruptcy an event of default.  *See K9 Bytes*, 56 Misc. 3d at 817.

This analysis is not theoretical.  As you are well aware, Everest's revenue based funding agreements have been upheld against numerous challenges.  *E.g.*, *Cavalry LLC v. EBF Holdings, LLC*, Index No. EF-003081-2021, NYSCEF Doc. No. 48, at 14-15; *NY Cap. Asset Corp. v. F & B Fuel Oil Co.*, 2018 N.Y. Misc. Lexis 786 (Sup. Ct. Westchester Cty. Mar. 8, 2018) (merchant cash agreement between Defendant and non-party EBF "is not a loan, but is for the sale and purchase of accounts receivables as a matter of law."); *EBF Partners, LLC v. Yaz & Yash LLC*, 2017 N.Y. Misc. Lexis 2909, at *7 (Sup. Ct. Westchester Cty. July 19, 2017) ("the Court credits plaintiff's argument that the underlying Agreement had not been a loan but rather a merchant agreement, and thus outside the ambit of the usury statutes."); *EBF Partners, LLC v. Hackenberg*, 2017 N.Y. Misc. Lexis 13629, at *34 (Sup. Ct. Erie Cty. June 29, 2017).

**(3) The Agreement is neither against public policy nor unconscionable**

Unconscionability is *only* a defense to enforcement of a contract, as a "cause of action for unconscionability may not be used to seek affirmative relief."  *Colonial*, 252 F. Supp. 3d at 285;



*see also Fortune Limousine Serv., Inc. v. Nextel Commc'ns*, 35 A.D.3d 350, 354 (2d Dep't 2006) (dismissing claim for affirmative relief based on "unconscionability"). But even if it could be affirmatively claimed, the First Amended Complaint fails to plead the requirements for unconscionability. The doctrine requires a contract to be both procedurally unconscionable – which looks at whether there was a lack of meaningful choice in the contract formation process – and substantially unconscionable – which looks at the content of the contract. *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010); *Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 68 (1978). The First Amended Complaint fails to allege anything conceivably related to procedural unconscionability, much less a "significant disparity in bargaining power," *Rowe*, 46 N.Y.2d at 68, between Plaintiffs and Everest. The allegations that the Agreement charges "unconscionable" interest are belied by the fact that, as explained in Point 2 above, the Agreement does not charge interest and that its terms are consistent with the scores of revenue based financing contracts that courts have upheld.

**(4) Declaratory relief is inappropriate because the claim is duplicative of the First Cause of Action**

"Courts generally reject a [Declaratory Judgment Act] claim when other claims in the suit will resolve the same issues." *EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 99 (S.D.N.Y. 2018). "When other claims in the suit will resolve the same issues," "a declaratory judgment will not serve any useful purpose," and a court can exercise its discretion to dismiss the claim. *Optanix, Inc. v. Alorica Inc.*, 2021 WL 2810060, at *3 (S.D.N.Y. July 6, 2021). The Second Cause of Action seeks two declarations, both of which rise and fall on the enforceability of the Agreement or, in other words, whether Plaintiffs can sue for affirmative relief (Point 1, above), whether the Agreement is a loan (Point 2, above), and whether the Agreement is unconscionable or otherwise against public policy (Point 3, above). A decision on Plaintiff's First Cause of Action "will necessarily settle the issues for which the declaratory judgment is sought" and thus dismissal of this claim is appropriate. *City of Perry, Iowa v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 286 (S.D.N.Y. 2016). Additionally, to the extent that Plaintiffs seek a declaration that the guaranty has not been triggered against Mr. Schoenwald, they have failed to allege any facts supporting that contention or even suggesting that a ripe controversy exists on the issue.

**Conclusion**

For the foregoing reasons, Everest believes the First Amended Complaint should be dismissed in its entirety. Please note that Judge Karas's Rules require you to respond within seven days "indicating either that [you] will amend [your] pleading (with a proposed deadline for filing the amended pleading) or that [you] do not see a need to amend, citing the relevant case law that supports [your] position."

Very truly yours,

/s/ David A. Picon

David A. Picon

cc: Hon. Kenneth M. Karas