UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STREAMLINED CONSULTANTS, INC.
d/b/a STREAMLINED CONSULTANTS *and*
MOSHE SCHOENWALD,

                              Plaintiffs,

        v.

EBF HOLDINGS LLC d/b/a EVEREST
BUSINESS FUNDING d/b/a EBF,

                              Defendant.

---

No. 21-CV-9528 (KMK)

OPINION & ORDER

Appearances:

Scott Levenson, Esq.
Levenson Law Group
Nyack, NY
*Counsel for Plaintiffs*

David A. Picon, Esq.
Matthew J. Morris, Esq.
William G. Fassuliotis, Esq.
Proskauer Rose LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Streamlined Consultants, Inc. d/b/a Streamlined Consultants ("Streamlined Consultants")

and Moshe Schoenwald ("Schoenwald"; together with Streamlined Consultants, "Plaintiffs")

bring this Action against EBF Holdings LLC d/b/a Everest Business Funding ("Everest" or

"Defendant") for contract rescission and declaratory relief based on Plaintiffs' agreement to what

Plaintiffs allege is a criminally usurious loan, carrying an interest rate of 230.5%.  (*See generally*

First Am. Compl. ("FAC") (Dkt. No. 1-4).)  Before the Court is Defendant's Motion To Dismiss

the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the

"Motion").  (*See* Not. of Mot. (Dkt. No. 12).)  For the following reasons, the Motion is granted.

## I.  Background

### A.  Factual Background

Streamlined Consultants is a New York corporation; Schoenwald is the principal of

Streamlined Consultants.  (*See* FAC ¶¶ 1–2.)  Everest is a Delaware limited liability company

with its principal place of business located in Doral, Florida.  (*See id.* ¶ 3.)

On May 21, 2021, the Parties entered a revenue-based funding agreement (the "Funding

Agreement") by which Everest purchased $199,500 worth of Streamlined Consultants's future

receipts for a purchase price of $150,000; Schoenwald served as a guarantor.  (*See* FAC Ex. A

("Funding Agreement"), at 2 (Dkt. No. 1-5).)[1,2]  The Funding Agreement was designed to sell to

---

[1] When citing to the Funding Agreement, the Court refers to the ECF-stamped page numbers at the top right-hand corner of each page.

[2] At the outset, the Court must address the factual inaccuracies in Plaintiffs' allegations as to the Funding Agreement in the FAC.  While it is, of course, correct that on a motion to dismiss, courts are instructed to "not only accept all factual allegations as true but also draw all reasonable inferences in the plaintiff's favor," *Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam) (quotation marks omitted), it is also well-settled that "[i]f a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true," *Owolabi v. Bank of Am., N.A.*, No. 18-CV-3991, 2019 WL 463849, at *2 (S.D.N.Y. Feb. 6, 2019) (quoting *Ace Sec. Corp. Home Equity Loan Tr., Series 2007-HE3 ex rel. HSBC Bank USA, Nat'l Ass'n v. DB Structured Prods., Inc.*, 5 F. Supp. 3d 543, 551 (S.D.N.Y. 2014)).  Here, the FAC heavily relies on the Funding Agreement, (*see, e.g.*, FAC ¶¶ 6–39), which is also attached to the FAC, (*see* Funding Agreement).  Thus, there is no question that the Court may consider the Funding Agreement itself in ruling on the Motion, and in considering the Funding Agreement, it easily becomes clear that many of the Funding Agreement's terms flatly contradict Plaintiffs' allegations concerning those terms.  (*Compare, e.g.*, FAC ¶ 13 (identifying an "annual interest rate" of "230.5%") *with* Funding Agreement 3 ("There is no interest rate.").)  In the event of a conflict between the Funding Agreement and Plaintiffs' allegations concerning the Funding Agreement, "the [Funding Agreement], not the allegations, control." *Owolabi*, 2019 WL 463849, at *2 (quotation marks omitted).  Therefore, in reciting the relevant facts as to the Funding Agreement herein, the Court refers primarily to the Funding Agreement itself and not the FAC.

Everest a 15% cut of Streamlined Consultants's future receipts, which would be automatically withdrawn from Streamlined Consultants's bank account on a daily basis.  (*See id.* at 2–3.)  But instead of forcing the Parties to calculate the precise dollar amount to be withdrawn on a daily basis, the Funding Agreement provided for a daily payment of $1,209.09 based on Streamlined Consultants's monthly average sales and the average weekdays in a calendar month.  (*See id.* at 2.)  In recognition of the fact that this agreed-upon daily payment amount may not always reflect 15% of Streamlined Consultants's actual receipts, however, the Funding Agreement also provided for a process by which Streamlined Consultants could request at the end of each calendar month that Everest reconcile Streamlined Consultants's actual receipts "by either crediting or debiting the difference back to or from [Streamlined Consultants's bank account] so that the amount [Everest] debited in the most recent calendar month equaled" 15% of Streamlined Consultants's actual receipts.  (*Id.* at 3.)  If Streamlined Consultants requested reconciliation and followed the proper procedures, then Everest was required to reconcile Streamlined Consultants's actual receipts.  (*See id.* ("Within four business days of [Everest's] reasonable verification of [the necessarily information for reconciliation], [Everest] *shall* reconcile [Streamlined Consultants's] actual receipts." (emphasis added)).)

The Funding Agreement makes clear that "[Streamlined Consultants] is selling a portion of a future revenue stream to [Everest] at a discount, not borrowing money from [Everest]," and therefore, "[Everest] assumes the risk that [f]uture [r]eceipts will be remitted more solely than

---

The Court also takes this opportunity to remind Plaintiffs' counsel of his Rule 11 obligations, and that "[b]y presenting to the [C]ourt a pleading, written motion, or other paper," Plaintiffs' counsel "certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] . . . the factual contentions have evidentiary support." FED. R. CIV. P. 11(b).  Violation of this provision is grounds for sanctions. *See* FED. R. CIV. P. 11(c).

[Everest] may have anticipated or projected because [Streamlined Consultants's] business has slowed down, or the full [p]urchased [a]mount may never be remitted because [Streamlined Consultants's] business went bankrupt or otherwise ceased operations in the ordinary course of business." (*Id.* at 6; *see also id.* at 3 (Everest acknowledging that "[t]here is no interest rate or payment schedule and no time period during which the [p]urchased [a]mount must be collected by [Everest]" and that "[Everest] is entering into this [Funding] Agreement knowing the risks that [Everest's] business may slow down or fail, and [Everest] assumes these risks based on [Streamlined Consultants's] representations[,] warranties[,] and covenants in this [Funding] Agreement, which are designed to give [Everest] a reasonable and fair opportunity to receive the benefit of its bargain").) Failure to satisfy the daily payment amount on a single occasion does not, on its own, constitute default under the terms of the Funding Agreement. (*See id.* at 7–8.) Moreover, Streamlined Consultants's potential future declaration of bankruptcy does not, on its own, constitute default under the terms of the Funding Agreement—or even breach of the Funding Agreement. (*See id.*; *see also id.* at 3 ("[Streamlined Consultants] going bankrupt or going out of business, in and of itself, does not constitute a breach of this Agreement").) Rather, the Funding Agreement specifies that failure to satisfy the daily payment amount will only constitute default when "[Streamlined Consultants] fails to provide timely notice to [Everest] such that in any given calendar month there are five consecutive ACH transactions attempted by [Everest] that are rejected by [Streamlined Consultants's] bank and [Streamlined Consultants] fails to communicate and/or provide documentary evidence satisfactory to [Everest] for the failed transactions or failed remittance." (*Id.* at 8.)

Plaintiffs supply no allegations as to whether the contractual relationship between Streamlined Consultants and Everest ever functioned in the manner set forth in the Funding

Agreement.  (*See generally* FAC.)  Instead, only six weeks after the Parties entered into the Funding Agreement—and presumably, after Plaintiffs received the full purchase price of $150,000 from Everest—Plaintiffs brought suit seeking to invalidate it.  (*See id.*)  Plaintiffs allege that the Funding Agreement is intentionally "mistitled" as "Payment Rights Purchase and Sale Agreement," and, in reality, is a loan agreement.  (*See id.* ¶ 6.)  Plaintiffs allege that as a loan agreement, the Funding Agreement is usurious, because if one were to divide the purchased amount of $199,500 by the daily payment of $1,209.09 (and ignore the reconciliation provision), one could conclude that "repayment" is due within 165 days under the Funding Agreement; this yields a usurious annual interest rate of 230.5%.  (*See id.* ¶¶ 11–13.)

B.  Procedural History

Plaintiffs initiated this Action with the filing of a summons and verified complaint in New York Supreme Court for the County of Rockland ("Rockland County Court") on July 8, 2021.  (*See* Summons (Dkt. No. 1-1); Compl. (Dkt. No. 1-2).)  On October 22, 2021, Plaintiffs filed the FAC, also in Rockland County Court.  (*See* FAC.)  On October 28, 2021, Plaintiffs' summons was signed, (*see* Dkt. No. 1-6), and on November 17, 2021, Defendant removed the Action to this Court on the basis of this Court's diversity jurisdiction, (*see* Not. of Removal (Dkt. No. 1)).

On November 22, 2021, Defendant filed a pre-motion letter in anticipation of moving to dismiss the FAC.  (*See* Dkt. No. 7.)  After receiving a response from Plaintiffs, (*see* Dkt. No. 8), the Court held a pre-motion conference and adopted a briefing schedule, (*see* Dkt. (minute entry for Jan. 24, 2022); Dkt. No. 11).  On January 31, 2022, Defendant filed its Motion To Dismiss. (*See* Not. of Mot.; Def.'s Mem. of Law in Supp. of Mot. ("Def.'s Mem.") (Dkt. No. 13); Decl. of David A. Picon in Supp. of Mot. (Dkt. No. 14).)  On February 28, 2022, Plaintiffs filed their Opposition, (*see* Pls.' Mem. of Law in Opp'n to Mot. ("Pls.' Mem.") (Dkt. No. 15)), and on

March 14, 2022, Defendant filed its Reply, (*see* Def.'s Reply Mem. of Law in Supp. of Mot. ("Def.'s Reply Mem.") (Dkt. No. 16)).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting FED. R. CIV. P. 8(a)(2))); *id.* at 678–79. ("Rule 8 marks a notable and generous

6

departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegation contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Div. 1181*, 9 F.4th at 94 (citation omitted).  Additionally, "when ruling on a Rule 12(b)(6) motion to dismiss," district courts are directed to confine their consideration to "the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotation marks omitted); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).

B.  Analysis

Plaintiffs bring two causes of action, both seeking equitable relief: Plaintiffs seek to rescind the Funding Agreement as unconscionable due to usury and a declaration that the Funding Agreement is usurious and, thus, unenforceable.  (*See* FAC ¶¶ 42–52.)  Defendant argues that the FAC must be dismissed in its entirety, because (1) under New York law, plaintiffs are precluded from suing for affirmative relief based on allegations of usury, whether civil or criminal, (*see* Def.'s Mem. 6–8); (2) even if Plaintiffs could seek affirmative relief via their claim of criminal usury, their usury claims fail as a matter of law because the Funding Agreement is not a loan, (*see id.* at 8–19); (3) Plaintiffs' claim for rescission fails because the Funding Agreement is neither against public policy nor unconscionable, (*see id.* at 19–22); and (4) Plaintiffs' claim for declaratory relief must be dismissed as duplicative, (*see id.* at 22–23).

The Court addresses these arguments to the extent necessary to decide the instant Motion.[3]

### 1.  Ability to Bring Affirmative Usury Claim

Plaintiffs base this entire Action on their allegation that the Funding Agreement is, in actuality, a criminally usurious loan agreement.  (*See generally* FAC.)  Under New York's usury statute, where the interest rate on a debt exceeds the criminal usury rate of 25% per annum, "a corporation may interpose an affirmative defense of usury and, if successful, obtain a declaration that invalidates the debt instrument ab initio."  *Haymount Urgent Care PC v. GoFund Advance, LLC*, — F. Supp. 3d —, 2022 WL 2297768, at *12 (S.D.N.Y. June 27, 2022) (underlining omitted) (citing *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 333 (App. Div. 2021)). "However, New York courts have uniformly construed this statute as limited to the affirmative defense, and they have prohibited corporations from bringing affirmative claims or counterclaims alleging criminal usury and seeking to invalidate an agreement." *Id.* (collecting cases); *see also Paycation Travel, Inc. v. Glob. Merch. Cash, Inc.*, 141 N.Y.S.3d 319, 320 (App. Div. 2021) ("General Obligations Law § 5-521 bars a corporation such as the plaintiff from asserting usury in any action, except in the case of criminal usury as defined in Penal Law § 190.40, and then only as a defense to an action to recover repayment of a loan, and not as a basis for a cause of action asserted by the corporation for affirmative relief."); *LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 122 N.Y.S.3d 309, 313 (App. Div. 2020) ("Although the defendants may assert criminal usury as an affirmative defense, they may not assert criminal usury as the basis for a counterclaim." (citations omitted)); *Intima-Eighteen, Inc. v. A.H.*

___

[3] In analyzing these arguments, the Court applies New York law because the Funding Agreement includes a New York choice of law provision.  (*See* Funding Agreement 8 ("[T]his Agreement shall be governed by and construed in accordance with the laws of the state of New York.").)

*Schreiber Co.*, 568 N.Y.S.2d 802, 804 (App. Div. 1991) ("[I]t is well established that the statute

generally proscribes a corporation from using the usury laws either as a defense to payment of an

obligation or, affirmatively, to set aside an agreement and recover the usurious premium.  The

statutory exception for interest exceeding 25 per annum is strictly an affirmative defense to an

action seeking repayment of a loan and may not, as here, be attempted as a means to effect

recovery by the corporate borrower." (citations omitted)).  Accordingly, Plaintiffs are barred

from bringing affirmative claims for relief based on allegations of usury.[4]

Because both Plaintiffs' claim for contract rescission and Plaintiffs' claim for a

declaratory judgment rest on Plaintiffs' claim that the Funding Agreement is criminally usurious,

(*see* FAC ¶¶ 42–46 (claiming that the Funding Agreement must be rescinded as unconscionable

because "[i]t is against public policy to allow companies and individuals to loan money at a

criminally usurious [rate]" and "[i]t is against public policy to allow companies and individuals

to circumvent usury laws by writing their loan agreements in a way that on its name, color, and

form appears to be a sales contract while in substance is a loan"); ¶¶ 47–52 (claiming entitlement

---

[4] Plaintiffs' argument that "criminal usury is generally plead as an affirmative defense" but that "[c]ourts have found that a claim for declaratory judgment on a usurious loan is proper" finds no basis in New York law.  (Pls.' Mem. ¶ 61.)  Indeed, none of the cases Plaintiffs cite supports this conclusion as to claims of criminal usury brought by corporate plaintiffs.  *See Mandelino v. Fribourg*, 242 N.E.2d 823, 823 (N.Y. 1968) (explaining that the loan in question was a mortgage to an individual plaintiff, a real estate broker); *Hope v. Contemporary Funding Grp.*, 513 N.Y.S.2d 171, 172 (App. Div. 1987) (explaining that the loan in question "was signed by the plaintiffs in their individual capacities" and therefore that "the usury laws applicable to corporate loans" do not govern); *Durst v. Abrash*, 253 N.Y.S.2d 351, 352 (App. Div. 1964) (explaining that the loan in question was a "purported stock sale transaction" involving an individual plaintiff); *Funding Grp., Inc. v. Water Chef, Inc.*, 852 N.Y.S.2d 736, 740 (Sup. Ct. 2008) (explaining that the corporate defendant "interpose[d] the *defense* of criminal usury" (emphasis added)); *Rivers v. Cambridge Mgmt. Grp. LLC*, 851 N.Y.S.2d 60, 2007 WL 2598897, at *1 (Sup. Ct. 2007) (unpublished table decision) (explaining that the loan in question was a "cash advance[]" provided to an individual plaintiff); *Raben v. Overseas Barters*, 286 N.Y.S.2d 404, 406 (Sup. Ct. 1967) (explaining that the loan in question was a mortgage to an individual plaintiff).

to a declaration that the Funding Agreement is "usurious and unenforceable")), the FAC is therefore dismissed in its entirety.  *See, e.g.*, *Scantek Med., Inc. v. Sabella*, 582 F. Supp. 2d 472, 474 (S.D.N.Y. 2008) (recounting cases in which the New York Supreme Court dismissed claims for criminal usury because "corporations . . . cannot bring civil claims under the criminal statute" and granting motion to dismiss the plaintiff's complaint seeking a judgment declaring agreements to be void as criminally usurious).

### 2.  Merits of Plaintiffs' Usury Claim

Even assuming arguendo that Plaintiffs could bring an affirmative claim for usury, Plaintiffs' claims would still be subject to dismissal because the Court agrees with Defendant that Plaintiffs' usury claims fail as a matter of law.  (*See* Def.'s Mem. 8–19.)

"The rudimentary element of usury is the existence of a loan or forbearance."  *Colonial Funding Network, Inc. v. TVT Cap., LLC v. Epazz, Inc.*, 252 F. Supp. 3d 274, 280 (S.D.N.Y. 2017) (quoting *Feinberg v. Old Vestal Rd. Assocs.*, 550 N.Y.S.2d 482, 483 (App. Div. 1990)). "If the transaction is not a loan, there can be no usury, however unconscionable the contract may be."  *Id.* (quoting *Seidel v. 18 E. 17th St. Owners, Inc.*, 598 N.E.2d 7, 11–12 (N.Y. 1992)); *see also Principis Cap., LLC v. I Do, Inc.*, 160 N.Y.S.3d 325, 326 (App. Div. 2022) ("The rudimentary element of usury is the existence of a loan or forbearance of money, and where there is no loan, there can be no usury, however unconscionable the contract may be." (citation omitted)).  "When determining whether a transaction is a usurious loan it must be considered in its totality and judged by its real character, rather than by the name, color, or form which the parties have seen fit to give it."  *Abir v. Malky, Inc.*, 873 N.Y.S.2d 350, 354 (App. Div. 2009) (quoting *Ujeuta v. Euro-Quest Corp.*, 814 N.Y.S.2d 551, 552 (App. Div. 2006)).  The New York Appellate Division has very recently explained that:

> To determine whether a transaction constitutes a usurious loan: "The court must examine whether the [alleged lender] is absolutely entitled to repayment under all circumstances.  Unless a principal sum is repayable absolutely, the transaction is not a loan.  Usually, courts weight three factors when determining whether repayment is absolute or contingent: (1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy."

*Principis Cap.*, 160 N.Y.S.3d at 326–27 (quoting *LG Funding*, 122 N.Y.S.3d at 311); *see also*

*Davis v. Richmond Cap. Grp.*, 150 N.Y.S.3d 2, 4 (App. Div. 2021) (finding a merchant cash

agreement to be a usurious loan on a motion to dismiss because the plaintiffs had sufficiently

alleged "the discretionary nature of the reconciliation provisions, the allegations that [the]

defendants refused to permit reconciliation, the selection of daily payment rates that did not

appear to represent a good faith estimate of receivables, provisions making rejection of an

automated debt on two or three occasions without prior notice an event of default entitling [the]

defendants to immediate repayment of the full uncollected purchase amount, and provisions

authorizing [the] defendants to collect on the personal guaranty in the event of [the] plaintiff

business's inability to pay or bankruptcy").

Here, it is clear that the Funding Agreement is not a loan because Defendant is not

absolutely entitled to repayment under all circumstances.  First, the Funding Agreement includes

a reconciliation provision, which—contrary to Plaintiffs' baseless argument in opposition—

provides that reconciliation is mandatory if requested by Streamlined Consultants.  (*Compare*

Funding Agreement 3 ("Within four business days of [Everest's] reasonable verification of [the

necessary information for reconciliation], [Everest] *shall* reconcile [Streamlined Consultants's]

actual receipts." (emphasis added)) *with* Pls.' Mem. ¶ 78 (arguing that "the reconciliation

provision is illusory, as reconciliation is not required and is at the discretion of . . . Defendant").)

This counsels against a finding that the Funding Agreement is a usurious loan, particularly where

Plaintiffs have not alleged that reconciliation did not in actuality function as agreed (or, indeed,

that Plaintiffs ever even requested reconciliation).  *See Tender Loving Care Homes, Inc. v. Reliable Fast Cash, LLC*, 172 N.Y.S.3d 335, 340 (N.Y. App. Div. 2022) (dismissing usury claim where the contract "indicates that [the defendant] would withdraw 42% of [the plaintiff's] accounts receivable until the purchase amount was recovered," but "the figure of 42% is not a firm percentage as . . . the contract authorized [the plaintiff] to request reconciliation to adjust the percentage to more closely reflect [the plaintiff's] future receipts" (quotation marks omitted)); *Am. Water Restoration, Inc. v. AKF Inc.*, 157 N.Y.S.3d 919 (Table), 2022 WL 176400, at *5 (Sup. Ct. Jan. 7, 2022) (dismissing usury claim and explaining that "the [a]greement's mandatory reconciliation provision undeniably refutes [the plaintiff's] criminal usury loan allegations"); *cf. Pirs Cap., LLC v. D&M Truck, Tire & Trailer Repair Inc.*, 129 N.Y.S.3d 734, 739–40 (Sup. Ct. 2020) (finding, on summary judgment, that the plaintiff could not demonstrate that an agreement was a usurious loan because the agreement "contains a reconciliation provision" and while the defendants "assert[ed] that no reconciliation ever occurred, and thus that the reconciliation provision was simply a sham to hide a usurious loan," the defendants could not demonstrate that they "ever *requested* an adjustment of the amounts being collected in order to account for the actual amount of [their] daily receivables" (emphasis in original)).

Second, the Funding Agreement does not have a finite term.  Indeed, Everest specifically acknowledges in the Funding Agreement that "*[t]here is . . . no payment schedule and no time period during which the [p]urchased [a]mount must be collected by [Everest]*," and therefore, that "[Everest] is entering into this [Funding] Agreement knowing the risks that [Everest's] business may slow down or fail."  (Funding Agreement 3.)  Another section of the Funding Agreement specifically contemplates that "[f]uture [r]eceipts [could] be remitted more solely than [Everest] may have anticipated or projected because [Streamlined Consultants's] business

12

has slowed down, or the full [p]urchased [a]mount may never be remitted because [Streamlined

Consultants's] business went bankrupt or otherwise ceased operations in the ordinary course of

business." (*Id.* at 6.)  Therefore, this factor, too, counsels against a finding that the Funding

Agreement is a usurious loan.  *See, e.g.*, *Colonial Funding Network*, 252 F. Supp. 3d at 281

("[The] [d]efendants' argument that the actual daily payments ensure that [the alleged lender]

will be paid the full receipts purchased amounts within 61 to 180 business days is contradicted

by the reconciliation provisions which provide that if the daily payments are greater than 15% of

[the merchant's] daily receipts, [the alleged lender] must credit the difference to [the merchant],

thus limiting [the lender's] obligation to 15% of daily receipts."); *Principis Cap.*, 160 N.Y.S.3d

at 327 ("[A]s the amount of the monthly payments could change, the term of the agreement was

not finite."); *Pirs Cap.*, 129 N.Y.S.3d at 740 (explaining that an agreement is not a loan "[i]f a

transaction . . . has a non-finite term," such as where "the length of time required to complete the

transaction will be contingent on the outside factor of customers actually shopping at the

merchant and paying for products and services, thereby generating receivables for the purchaser

to collect" (alteration and quotation marks omitted)).

Third and finally, the Funding Agreement does not contain any provisions establishing

any recourse for Everest should Streamlined Consultants declare bankruptcy.  The declaration of

bankruptcy does not constitute an event of default under the terms of the Funding Agreement,

(*see* Funding Agreement 7–8), nor does the declaration of bankruptcy constitute a breach of the

Funding Agreement, (*see id.* at 3 ("[Streamlined Consultants] going bankrupt or going out of

business, in and of itself, does not constitute a breach of this Agreement")).  Moreover, the only

other two provisions in the Funding Agreement which make any reference to bankruptcy are a

warranty that Streamlined Consultants was not insolvent at the time the Funding Agreement was

signed and a clause that requires Streamlined Consultants to notify Everest in the event

Streamlined Consultants declares bankruptcy.  (*See id.* at 7, 8.)  Therefore, this factor also

militates against a finding that the Funding Agreement is a usurious loan.  *See Principis Cap.*,

160 N.Y.S.3d at 327 (explaining that "the plaintiff established that the transaction set forth in the

agreement was not a loan" where, inter alia, "no contractual provision existed establishing that a

declaration of bankruptcy would constitute an event of default"); *cf. LG Funding*, 122 N.Y.S.3d

at 313 (affirming denial of dismissal of usury claim because, inter alia, "the agreement provides

that [the merchant's] written admission of its inability to pay its debt or its bankruptcy

constitutes events of default under the agreement, which entitle the [alleged lender] to the

immediate full repayment of any of the unpaid purchased amount").

　　　Having determined that all three factors supplied by New York courts to determine if an

agreement is a usurious loan counsel against such a finding, the Court finds that even if Plaintiffs

could bring an affirmative claim for usury, Plaintiffs' usury claim would still fail on the merits.

In so holding, the Court joins an ever-growing group of courts that have held that nearly identical

agreements—and in one case, a fully identical agreement, *see Cavalry LLC v. EBF Holdings,*

*LLC*, No. 3081/2021, 2021 WL 5868324, *2–15 (Sup. Ct. Oct. 5, 2021)—is not a usurious loan,

*see Yellowstone Cap. LLC v. Cent. USA Wireless LLC*, 110 N.Y.S.3d 485 (Table), 2018 WL

3765121, at *1 (Sup. Ct. June 25, 2018) (finding a merchant agreement "which clearly reflect[s]

the purchase of a certain percentage of a merchant's total future accounts, up to a certain amount,

for a specified purchase price" is not a usurious loan and noting that "[i]n no less than thirty-

eight (38) recent decisions, New York Courts have determined that the merchant agreements at

issue . . . do not constitute loans").

14

3.  Other Issues

Because, as the Court has already observed, Plaintiffs' claims both for rescission and for declaratory relief depend on their claim that the Funding Agreement is criminally usurious, the Court's rulings above dispose of the FAC in its entirety.  However, the Court briefly addresses certain other issues raised in the Motion briefing.

First, Plaintiffs argued in their Opposition brief that dismissal would be improper because "Defendant's current posture"—i.e., that the FAC fails to state a claim upon which relief can be granted—"directly contrasts with their Notice of Removal," in which Defendant invoked this Court's subject matter jurisdiction.  (*See* Pls.' Mem. ¶¶ 49–56.)  In so arguing, Plaintiffs have confused the concepts of pleading adequacy and subject matter jurisdiction.  Defendant here has not moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, but rather has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, an entirely separate concept.  *Compare* Fed. R. Civ. P. 12(b)(1) *with* Fed. R. Civ. P. 12(b)(6).  And as Defendant correctly points out, (*see* Def.'s Reply Mem. 2), the fact that a defendant has removed a case from state to federal court has no bearing on that defendant's future Rule 12(b)(6) motion; indeed, courts routinely consider and grant Rule 12(b)(6) motions brought by removing defendants.  *See generally, e.g.*, *Fawn Second Ave. LLC v. First Am. Title Ins. Co.*, No. 21-CV-3715, 2022 WL 2666911 (S.D.N.Y. July 11, 2022) (considering a Rule 12(b)(6) motion following the action's removal from state court); *Glick v. CMRE Fin. Servs., Inc.*, No. 21-CV-7456, 2022 WL 2475690 (S.D.N.Y. July 6, 2022) (same).

Second, it is clear from the face of the FAC that Plaintiffs' claim for rescission due to unconscionability is based solely on their claim that the Funding Agreement is criminally usurious, (*see* FAC ¶¶ 42–46), and that Plaintiffs do not allege unconscionability on any other

15

basis, (*see generally id.*).  However, Plaintiffs appear to argue in their opposition brief that they

have alleged unconscionability on other bases, including procedural unconscionability.  (*See*

Pls.' Mem. ¶ 111 ("Here, it is clear that, as for procedural unconscionability, there is an

inequality of bargaining power and an imbalance in the understanding an acumen of the

parties.").)  "[I]t is axiomatic that the [FAC] cannot be amended by the briefs in opposition to a

motion to dismiss," *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 453 n.11

(S.D.N.Y. Sept. 30, 2021) (quotation marks omitted), and the Court finds that no other basis for

unconscionability has been alleged.  And, in any event, even if Plaintiffs had alleged another

basis for unconscionability, this still would not have saved the FAC from dismissal, because like

usury, "[a] cause of action for unconscionability may not be used to seek affirmative relief"

under New York law.  *Colonial Funding Network*, 252 F. Supp. 3d at 287 (quoting *Ng v. HSBC*

*Mortg. Corp.*, No. 07-CV-5434, 2011 WL 3511296, at *8 (E.D.N.Y. Aug. 10, 2011)).

   Third, the Court shares some of the concerns raised by Justice Catherine Bartlett in

*Cavalry*—in which an identical Everest funding agreement was challenged as criminally

usurious—as to the genesis of this Action.  Here, as in *Cavalry*, "[i]t appears from the face of the

record that [Streamlined Consultants]—breezily assuming victim status with no concrete factual

allegations or supporting evidence of any kind—has fraudulently induced the defendant funding

compan[y] to part with [a] considerable sum[] of money in return for promises it had no intention

of keeping." *Cavalry*, 2021 WL 5868324, at *9.  Justice Bartlett even went so far as to venture

that the *Cavalry* merchant and its principal "are potentially liable to criminal prosecution for

larceny by false promise." *Id.*  The Court here will not go so far in forecasting potential criminal

prosecution but merely shares its concerns for Plaintiffs to consider when determining whether

Plaintiffs have a good faith basis to amend.  *See supra* note 2.

### III.  Conclusion

For the foregoing reasons, Defendant's Motion is granted.

The Clerk of Court is directed to terminate the pending motion.  (*See* Dkt. No. 12.)

Because is the first adjudication of Plaintiffs' claims on the merits, the dismissal is without

prejudice.  To the extent Plaintiffs have a good faith basis for filing a second amended complaint,

they must do so within 30 days of the date of this Opinion & Order.  Failure to properly and

timely amend will result in dismissal of these claims with prejudice, without further notice.

SO ORDERED.

Dated:    September 20, 2022
            White Plains, New York

_____
          KENNETH M. KARAS
        United States District Judge