UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STREAMLINED CONSULTANTS, INC. d/b/a
STREAMLINED CONSULTANTS; AND MOSHE
SCHOENWALD,

Plaintiffs,

- against -

EBF HOLDINGS, LLC d/b/a EVEREST BUSINESS
FUNDING, SCOTT CROCKETT, JOHN DOES 1-5
and ABC CORPORATIONS 1-5

Defendant.

Case No. 7:21-cv-9528-KMK

**Oral Argument Requested**

---

## MEMORANDUM OF LAW IN SUPPORT OF EBF HOLDINGS, LLC'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

PROSKAUER ROSE LLP
David A. Picon
Matthew J. Morris
William G. Fassuliotis
11 Times Square
New York, NY 10036-8299
(212) 969-3000

*Attorneys for Defendant EBF Holdings, LLC*

## TABLE OF CONTENTS

                                                                       **Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ............................................................................................................................ 3

ARGUMENT .................................................................................................................................. 4

    I.      RULE 11 REQUIRES COUNSEL TO CERTIFY THAT THEIR LEGAL CONTENTIONS ARE WARRANTED BY EXISTING LAW OR A NONFRIVOLOUS ARGUMENT AND THAT THE FACTUAL CONTENTIONS IN A PLEADING HAVE EVIDENTIARY SUPPORT. .................. 5

    II.     PLAINTIFFS LEGAL ARGUMENTS ARE FRIVOLOUS AS THEY ARE ALREADY FORECLOSED BY THIS COURT'S ORDER DISMISSING THE FIRST AMENDED COMPLAINT ........................................................................ 6

         A.     Plaintiffs' RICO Count Is Based on the Frivolous Argument that the Agreement Is a Usurious Loan, Which Is Foreclosed by this Court's Opinion and Order Dismissing the First Amended Complaint ..................................................................................................... 7

         B.     Plaintiffs' Fraud Claim Is Likewise Frivolous, as It Is an Affirmative Claim Based on Usury, Which This Court Has Ruled Cannot Be Made. ....................................................................................................... 9

    III.    FACTS KNOWN TO PLAINTIFFS SHOW THAT ALLEGATIONS IN THE COMPLAINT ARE FALSE. ................................................................................... 9

         A.     Plaintiffs Falsely Allege That Everest "Forc[ed]" Streamlined to Pay Off the 2019 Agreement with Funds from the 2021 Agreement. .................................................................................................................. 10

         B.     Plaintiffs Falsely Claim They Paid "Thousands of Dollars of Unlawful Debt." .................................................................................................... 11

CONCLUSION ............................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*(RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*,
  2022 WL 4234552 (S.D.N.Y. Sept. 14, 2022) ........................................................................... 5

*Abdelhamid v. Altria Grp., Inc.*,
  515 F. Supp. 2d 384 (S.D.N.Y. 2007) .................................................................................. 4, 5

*Adams v. New York State Educ. Dep't*,
  2010 WL 4970011 (S.D.N.Y. Dec. 8, 2010), *report and recommendation adopted as modified sub nom. Adams v. New York State Dep't of Educ.*, 855 F. Supp. 2d 205 (S.D.N.Y. 2012), *aff'd sub nom. Hochstadt v. New York State Educ. Dep't*, 547 F. App'x 9 (2d Cir. 2013) ................................................................... 6

*Cavalry LLC v. EBF Holdings, LLC*,
  2021 N.Y. Misc. Lexis 5833 (Sup. Ct. Orange Cty. Oct. 5, 2021) ........................................... 3

*Cedar Swamp Holdings, Inc. v. Zaman*,
  487 F. Supp. 2d 444 (S.D.N.Y. 2007) ...................................................................................... 6

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) .................................................................................................................. 5

*Cross & Cross Props., Ltd. v. Everett Allied Co.*,
  886 F.2d 497 (2d Cir. 1989) ................................................................................................... 10

*Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  2003 WL 22227956 (S.D.N.Y. Sept. 23, 2003) .................................................................... 5, 6

*Dimitri Enters., Inc. v. Spar Ins. Agency LLC*,
  2022 WL 5237811 (2d Cir. Oct. 6, 2022) ................................................................................. 7

*Gowanus Indus. Park, Inc. v. Arthur H. Sulzer Assocs., Inc.*,
  2008 WL 877203 (E.D.N.Y. Apr. 1, 2008) ............................................................................ 10

*Katzman v. Victoria's Secret Catalogue*,
  167 F.R.D. 649 (S.D.N.Y. 1996),
  *aff'd*, 113 F.3d 1229 (2d Cir. 1997) ............................................................................... 1, 5, 6

*LCS Grp., LLC v. Shire LLC*,
  2019 WL 1234848 (S.D.N.Y. Mar. 8, 2019),
  *aff'd*, 2022 WL 1217961 (2d Cir. Apr. 26, 2022) ............................................................ 5, 11

*Les Mutuelles du Mans Vie v. Life Assur. Co. of Pa.*,
    128 F.R.D. 233 (N.D. Ill. 1989) .................................................................................... 7

*Levine v. FDIC*,
    2 F.3d 476 (2d Cir. 1993) ........................................................................................... 10

*Levy v. Aaron Faber, Inc.*,
    148 F.R.D. 114 (S.D.N.Y. 1993) ................................................................................. 6

*Mars v. Anderman*,
    136 F.R.D. 351 (E.D.N.Y. 1989) ................................................................................ 5

*Morley v. Ciba-Geigy Corp.*,
    66 F.3d 21 (2d Cir. 1995) ............................................................................................ 6

*O'Malley v. New York City Transit Auth.*,
    896 F.2d 704 (2d Cir. 1990) ........................................................................................ 6

*Owolabi v. Bank of Am., N.A.*,
    2019 WL 463849 (S.D.N.Y. Feb. 6, 2019) .................................................................. 8

**STATUTES**

18 U.S.C. § 1962(c) ............................................................................................................ 7, 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 11 ............................................................................................................ *passim*

Defendant EBF Holdings, LLC ("Everest") respectfully submits this motion, pursuant to Fed. R. Civ. P. 11, to sanction Plaintiffs Streamlined Consultants, Inc. ("Streamlined"), Moshe Schoenwald ("Schoenwald," and with Streamlined, "Plaintiffs"), and their counsel.

## PRELIMINARY STATEMENT

In an opinion and order dated September 20, 2022 ("Opinion" or "Op.," ECF No. 17), this Court dismissed Plaintiffs' First Amended Complaint without prejudice ("FAC," No. ECF 1-4).  In doing so, the Court expressed concern with Plaintiffs' factual inaccuracies regarding the terms of the agreement and expressly reminded Plaintiffs of their obligations under Rule 11 (Op. at 2 n.2), and cautioned them to consider whether they had a "good faith basis" (*id.* at 16, 17) to amend.  Plaintiffs' Second Amended Complaint ("SAC," ECF No. 18) demonstrates they ignored those admonitions.  Indeed, their amended pleading violates Rule 11 in multiple ways.  Plaintiffs have violated Rule 11(b)(2) by advancing frivolous legal arguments clearly foreclosed by this Court's Opinion.  Indeed, the Court's Opinion was manifestly clear in its holdings.  And they have violated Rule 11(b)(3) by including factual contentions whose falsity must have been clear to Plaintiffs and their counsel based on even the most perfunctory investigation.  And if all of the above was not bad enough, Plaintiffs' amended pleading seeks to raise the stakes, packaging their blatantly false accusations into baseless legal claims for RICO, which has been called "the litigation equivalent of a thermonuclear device" due to its stigmatizing effect on defendants.  *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997).  For their frivolous filings, Plaintiffs and their counsel deserve to be sanctioned.

As shown in Point I, the law is clear that both frivolous legal contentions and pleadings that contain allegations made in blatant disregard of the facts are sanctionable under Rule 11.  This is especially true when such allegations are made in connection with a RICO claim.  Many

judges have found the deterrence value of Rule 11 sanctions particularly valuable under similar circumstances.

As shown in Point II, Plaintiffs' legal arguments are frivolous. First, their argument that Everest violated RICO by collecting an unlawful debt is in direct contravention of this Court's previous decision finding the agreement at issue is not a loan and thus, necessarily, not usurious. Simply put, Plaintiffs' RICO claim hinges on a premise which, as a matter of law, has already been rejected. Second, Plaintiffs' fraud argument is also frivolous as it is an affirmative claim based on accusations of usury, which this Court has already found New York law does not permit corporations or their guarantors to pursue.

As shown in Part III, the Court may impose sanctions based on a single false statement in a pleading; here, Plaintiffs make at least two demonstrably false allegations. First, they allege Everest "forc[ed]" Streamlined to enter into a second agreement to pay off an earlier agreement, thus heaping debt upon debt in a "vicious cycle." (SAC ¶¶ 34, 87.) In reality, Streamlined paid off the earlier agreement a full year prior to entering into the second agreement. There was no "cycle" of mounting debt, and the attempt to suggest there was is both false and incompatible with the most elementary factual investigation by counsel with a duty of candor to the Court. Second, Plaintiffs allege they paid "thousands of dollars of unlawful debt," (SAC ¶ 67), when in fact they have profited to the tune of over $90,000 from their transactions with Everest by refusing to pay. Combined with the fact that the Court has already rejected the alleged basis for any "unlawful debt" allegation, the averment that Plaintiffs have paid thousands in "unlawful debt" rather than pocketing a large amount of Everest's funds is knowingly false.

Any one of the above issues would be sufficient for sanctions; together they leave no doubt.  For violating Rule 11, the Court should order both Plaintiffs and their counsel to pay Everest's legal fees for both this motion and the motion to dismiss the SAC.

## BACKGROUND

Streamlined entered into agreements with Everest on October 11, 2019 (the "2019 Agreement")[1] and May 21, 2021 (the "2021 Agreement"),[2] which co-Plaintiff Schoenwald signed as guarantor to both.  Under the terms of the 2019 Agreement, Everest advanced $80,000 of revenue-based financing, in exchange for $108,800 of Streamlined's future receipts.  (2019 Agreement at 1.)  Streamlined completed its obligations, making its final remittance on May 18, 2020. (Declaration of Alexandra Reyes ("Reyes Decl.") ¶ 4 & Ex. A.)  Under the terms of the 2021 Agreement, which was entered into over a year after payment under the 2019 Agreement was completed, Streamlined obtained $150,000 of revenue-based financing and owed $199,500 of its future receipts.  (2021 Agreement at 1.)  Instead of fulfilling their obligations, Streamlined defaulted six weeks later, and Plaintiffs filed suit against Everest in state court on July 8, 2021, seeking to void the agreement.  Plaintiffs did not immediately serve their papers against Everest.  Rather, Plaintiffs waited to serve until after they amended their complaint on October 22, 2021 (over five months later).[3]  Therein, Plaintiffs claimed they had no obligation to pay the 2021 Agreement because it was actually a usurious loan.

---

[1] The 2019 Agreement (ECF 18-2), which is Exhibit B to the SAC, is Exhibit 1 to the Declaration of David A. Picon ("Picon Decl.") in support of this motion.

[2] The 2021 Agreement (ECF 18-1), which is Exhibit A to the SAC, is Exhibit 2 to the Picon Declaration.

[3] The amended complaint came a few weeks after Everest succeeded on a motion for summary judgment to dismiss a near-identical complaint of another client of Plaintiffs' counsel.  *See Cavalry LLC v. EBF Holdings, LLC*, 2021 N.Y. Misc. Lexis 5833 (Sup. Ct. Orange Cty. Oct. 5, 2021).

3

Everest removed the action and moved to dismiss the then-operative FAC (Picon Decl. Ex. 3). The Court granted that motion in an Opinion and Order dated September 20, 2022 (the "Opinion" or "Op.," ECF No. 17, Picon Decl. Ex. 4), holding, among other things, that claims sounding in usury cannot be brought affirmatively (Op. at 8-10) and the Agreement is not a loan. (*Id.* at 11-14.) The Court found parts of Plaintiffs' argument to be "baseless." (*Id.* at 11.) Finally, the Court took the opportunity to "remind Plaintiffs' counsel of his Rule 11 obligations" (*id.* at 3 n.2) and also cautioned that any second amended complaint should "have a good faith basis for filing." (*Id.* at 17.) Plaintiffs did not move to reconsider the opinion or seek an appeal, and filed the SAC (Picon Decl. Ex. 5) on October 20, 2022.

Before bringing this motion, Everest filed a pre-motion letter indicating its intent to bring a motion to dismiss and a motion for Rule 11 sanctions. (ECF No. 19.) Plaintiffs' letter did not substantively respond to Everest's pre-motion Rule 11 arguments other than to chide Everest for an "irresponsible use of Rule 11" and that the identified misrepresentations are merely "a contention of facts." (ECF No. 23 at 3.)

## ARGUMENT

As shown below, Plaintiffs' Complaint is riddled with frivolous legal arguments and unsupportable factual contentions. In light of the seriousness of Plaintiffs' violation and the irreparable reputational harm that RICO claims may cause, Everest submits that an appropriate sanction would be to require Plaintiffs to pay the attorneys' fees and costs Everest incurred in connection with this motion and the motion to dismiss the SAC that Everest is also making as an unavoidable response to Plaintiffs' frivolous filings.[4]

---

[4] Courts have broad discretion to award sanctions, even including dismissal, under Rule 11. *See, e.g.*, *Abdelhamid v. Altria Grp., Inc.*, 515 F. Supp. 2d 384, 400 (S.D.N.Y. 2007). Here, Everest is moving separately to dismiss the SAC, and proposes the lesser sanction of motion-specific fees. While *Abdelhamid* deemed dismissal a more appropriate sanction than legal fees, there is

4

**I.     RULE 11 REQUIRES COUNSEL TO CERTIFY THAT THEIR LEGAL CONTENTIONS ARE WARRANTED BY EXISTING LAW OR A NONFRIVOLOUS ARGUMENT AND THAT THE FACTUAL CONTENTIONS IN A PLEADING HAVE EVIDENTIARY SUPPORT.**

Rule 11 prohibits attorneys from advancing frivolous legal arguments and making allegations they or their clients know are false. The rule provides that by presenting a pleading to the court, counsel certifies, among other things, that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," Fed. R. Civ. P. 11(b)(2), and "the factual contentions have evidentiary support." *Id.* 11(b)(3). The purpose of Rule 11 is to "deter baseless filings in District Court and . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990); *(RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*, 2022 WL 4234552, at *3 (S.D.N.Y. Sept. 14, 2022); *see also* Fed. R. Civ. P. 11, Advisory Comm. Notes, 1983 Amendment (purpose is to "check abuses in the signing of pleadings").

The "deterrence value" of Rule 11 "is particularly significant in the RICO context, 'because commencement of a civil RICO action has an almost inevitable stigmatizing effect on those named as defendants.'" *LCS Grp., LLC v. Shire LLC*, 2019 WL 1234848, at *15 (S.D.N.Y. Mar. 8, 2019), *aff'd*, 2022 WL 1217961 (2d Cir. Apr. 26, 2022); *Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2003 WL 22227956, at *13 (S.D.N.Y. Sept. 23, 2003) (quoting *Katzman*, 167 F.R.D. at 660). Accordingly, courts "have not hesitated to impose sanctions under

---

no possibility here, unlike in *Abdelhamid*, that counsel could conceivably believe the sanctionable allegations here. The rule permits the Court to impose sanctions on counsel, their client, or both. Fed. R. Civ. P. 11(c)(1). Thus, when the litigant is responsible for the violation, the Court may direct the sanction accordingly. *See, e.g.*, *Mars v. Anderman*, 136 F.R.D. 351, 355 (E.D.N.Y. 1989) (sanctioning RICO plaintiff for causing his attorney to draw up RICO complaint based on "allegations that had no basis in fact").

5

Rule 11 when RICO claims have been found to have been frivolous." *Dangerfield*, 2003 WL 22227956, at *13 (reviewing authorities). Civil RICO "is an unusually potent weapon – the litigation equivalent of a thermonuclear device." *Katzman*, 167 F.R.D. at 655; *see also Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 449 (S.D.N.Y. 2007). Therefore, parties who sue under RICO must be held accountable under Rule 11 when they bandy allegations of criminal activity that they know are false. *See, e.g.*, *O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 706 (2d Cir. 1990); *Dangerfield*, 2003 WL 22227956, at *13; *Katzman*, 167 F.R.D. at 660; *Levy v. Aaron Faber, Inc.*, 148 F.R.D. 114, 123 (S.D.N.Y. 1993).

## II. PLAINTIFFS LEGAL ARGUMENTS ARE FRIVOLOUS AS THEY ARE ALREADY FORECLOSED BY THIS COURT'S ORDER DISMISSING THE FIRST AMENDED COMPLAINT.

Plaintiffs violated Rule 11(b)(2) by building its RICO allegations on legal contentions already rejected by this Court. "An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an objective standard of reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995) (alteration in original) (citation omitted). Frivolous legal positions include arguments barred by the law of the case. *See id.* "Presenting again a pleading . . . that was adjudicated deficient, without substantially addressing legal deficiencies previously adjudicated, violates the duty to conduct a reasonable inquiry into law." *Adams v. New York State Educ. Dep't*, 2010 WL 4970011, at *9 (S.D.N.Y. Dec. 8, 2010) (citation omitted), *report and recommendation adopted as modified sub nom. Adams v. New York State Dep't of Educ.*, 855 F. Supp. 2d 205 (S.D.N.Y. 2012), *aff'd sub nom. Hochstadt v. New York State Educ. Dep't*, 547 F. App'x 9 (2d Cir. 2013). As such, the Second Circuit has upheld sanctions "where an attorney or litigant may have initially filed a non-frivolous claim but, after the district court's dismissal of that claim, re-filed a similar or identical

claim in an amended pleading without any good-faith basis for overcoming the district court's prior ruling." *Dimitri Enters., Inc. v. Spar Ins. Agency LLC*, 2022 WL 5237811, at *2 (2d Cir. Oct. 6, 2022) (citing cases). This is such a case.

> **A.   Plaintiffs' RICO Count Is Based on the Frivolous Argument that the Agreement Is a Usurious Loan, Which Is Foreclosed by this Court's Opinion and Order Dismissing the First Amended Complaint.**

In support of their RICO claim, Plaintiffs allege that Everest is collecting an unlawful debt in violation of 18 U.S.C. § 1962(c), specifically that the agreements between the parties are criminally usurious under New York law. For example, Plaintiffs allege, "[t]he debt, including such debt evidenced by the [2021 Agreement], constitutes unlawful debt" because "it violates applicable criminal usury statutes." (SAC ¶ 84.) But this argument is frivolous as the Opinion squarely forecloses this argument. The Court has already established, as a matter of law and as law of the case, that the 2021 Agreement is not a usurious loan: "it is *clear* that the [2021] Funding Agreement is not a loan because Defendant is not absolutely entitled to repayment under all circumstances." (Op. at 11 (emphasis added).) "Failure to comply with the *clearly-stated* law of the case is inherently unreasonable" and warrants Rule 11 sanctions. *Les Mutuelles du Mans Vie v. Life Assur. Co. of Pennsylvania*, 128 F.R.D. 233, 240 (N.D. Ill. 1989) (emphasis added). Plaintiffs had an opportunity to move this Court to reconsider its Opinion or to appeal the decision. They did neither. Instead, they chose to plow ahead with clearly rejected claims. Objectively and by definition, the RICO claim has "no chance of success." No legal research was necessary; counsel merely needed to read the Opinion.

Despite this clear holding, Plaintiffs use 38 (out of 121) paragraphs to contest the Court's conclusions by either alleging the 2021 Agreement is actually a loan or has attributes of a loan. (SAC ¶¶ 20, 26-32, 34-56, 84, 93-96, 103, 107.) In fact, 30 paragraphs from the FAC are included verbatim or near-verbatim in the SAC. *Compare* FAC ¶¶ 8-36, 38, *with* SAC ¶¶ 26-32,

35-56. But even excluding the repeat allegations, the new allegations do not matter because if "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control." (Op. at 2 n.2 (quoting *Owolabi v. Bank of Am., N.A.*, 2019 WL 463849, at *2 (S.D.N.Y. Feb. 6, 2019))). Nothing Plaintiffs could add could change what the 2021 Agreements says, and the ultimate conclusion that the Agreement is not a loan.

Any claim for RICO predicated on the 2019 Agreement is likewise frivolous. Though the Court has not yet adjudicated the 2019 Agreement, it has clearly stated the law it would apply to analyze what makes an agreement a loan. (Op. at 11.) Plaintiffs make no effort to distinguish the earlier agreement or explain why the Court should come out a different way. The 2019 Agreement is consistent with the 2021 Agreement in all material respects—*compare* 2021 Agreement at 2 ("Seller's Right to Reconciliation"), *id.* at 2 ("Purchaser's Acknowledgement"), *id.* at 5 § 2.2 ("Nonrecourse Sale of Payment Rights"), and *id.* at 6-7 § 3.1 (bankruptcy not an event of default), *with* 2019 Agreement at 2 ("Seller's Right to Reconciliation"), *id.* at 2 ("Purchaser's Acknowledgement"), *id.* at 5 § 2.2 ("Nonrecourse Sale of Payment Rights"), and *id.* at 6 § 3.1 (bankruptcy not an event of default)—and easily clears the criteria set in the Opinion.

If the underlying agreements are not unlawful debt, then Plaintiffs have no RICO claim based on that theory.[5] Plaintiffs need only read the Opinion to know that the agreements are lawful. That they advance this claim anyway is the epitome of frivolous.

---

[5] Plaintiffs also appear to make a perfunctory attempt to plead a violation of RICO § 1962(c) based on a pattern of racketeering activity consisting of wire fraud predicates (*e.g.*, SAC ¶ 86). But, as discussed at greater length in Everest's motion to dismiss filed contemporaneously with service of this motion, even assuming those "wire fraud" allegations are pleaded sufficiently to present a distinct theory, they depend on the premise that the Agreements are loans, so they are just as meritless as the collection of unlawful debt allegations.

8

> B.  **Plaintiffs' Fraud Claim Is Likewise Frivolous, as It Is an Affirmative Claim Based on Usury, Which This Court Has Ruled Cannot Be Made.**

Plaintiffs' common law fraud claim is also frivolous. In accordance with clear New York law, this Court held that corporations and their guarantors cannot seek affirmative claims for relief based on allegations of usury, and dismissed all claims for that reason. (Opp. at 8-10.) Though a different cause of action, Plaintiffs' fraud claim is likewise predicated on the 2021 Agreement being a usurious loan and likewise barred by the law of the case. The supposed "fraud" consists of allegedly misstating the nature of the 2021 Agreement by characterizing it as a sale rather than a loan. (SAC ¶¶ 112 (fee charged by Everest was allegedly "disguised interest charges"); 116 ("Everest took great steps to disguise this loan as a purchase"); 119 ("false representations were also made by Everest to induce Plaintiffs to enter into the Agreement believing that they had the ability to pay based off of actual receivables, rather than simply a loan").)

Plaintiffs also allege that three fees deducted from the purchase price – an origination fee, a wire transfer fee, and an ACH program fee – were "improperly deducted" "sham fees" (SAC ¶¶ 111-114) because "these services or costs were never provided or incurred or were otherwise provided or incurred for amounts far below those stated in the Agreement." (SAC ¶ 115.) These "sham fee" allegations include the allegation that the fees were really "interest." (*Id.* ¶ 112.) Thus, these allegations are all at bottom dependent on the underlying premise that the 2021 Agreement is a loan, a position previously rejected. Accordingly, this claim is likewise frivolous.

**III.  FACTS KNOWN TO PLAINTIFFS SHOW THAT ALLEGATIONS IN THE COMPLAINT ARE FALSE.**

Rule 11(b)(3) specifically requires counsel to certify based on reasonable investigation that the facts alleged in their pleadings have evidentiary support. Accordingly, pleadings that

9

exhibit a "blatant disregard of the facts amply warrant[] the imposition of sanctions." *Levine v. FDIC*, 2 F.3d 476, 479 (2d Cir. 1993). Indeed, the Court may impose sanctions based on a single false statement in a pleading. *See, e.g.*, *Gowanus Indus. Park, Inc. v. Arthur H. Sulzer Assocs., Inc.*, 2008 WL 877203, at *7-8 (E.D.N.Y. Apr. 1, 2008) (awarding sanction based on "only one" serious misstatement of fact in a pleading); *see generally Cross & Cross Props., Ltd. v. Everett Allied Co.*, 886 F.2d 497, 504-05 (2d Cir. 1989) (even if "the rest of the pleading was sound," Rule 11 would require sanction for specific claim that was frivolous). Here, Plaintiffs allege at least two undeniably false statements.

### A. Plaintiffs Falsely Allege That Everest "Forc[ed]" Streamlined to Pay Off the 2019 Agreement with Funds from the 2021 Agreement.

First, Plaintiffs allege that Defendants "engaged in a pattern of racketeering" by advancing funds to Plaintiffs in 2021 to pay off what they characterize as a "previous loan" or "prior illegal loan." (SAC ¶¶ 24, 33-34, 96.) They allege that Defendants used the prior obligation to "force[]" Plaintiffs to incur new obligations. (*Id.* ¶¶ 34, 92.) That is false. As explained and shown in the Reyes Declaration and Exhibit A attached thereto—and as Plaintiffs well know—Plaintiffs paid off their 2019 obligation in May 2020, a full year before entering into the 2021 Agreement. (Reyes Decl. ¶ 4 & Ex. A.) There was no linkage between the two deals, no use of a prior debt to "force" Plaintiffs to incur a new one, and no "pattern."

The most basic factual investigation would have enabled Plaintiffs to avoid this material misstatement of the facts. In fact, Plaintiffs merely needed to read the exhibit they attached and cited. Citing to the final page of the 2021 Agreement, Plaintiffs state "[a]s a condition of the [2021 Agreement] Plaintiff was required to pay off the balance of the previous loan with a portion of the proceeds from the Agreement." (SAC ¶ 24.) But although the final page is entitled "Payoff of Existing Advance," (Picon Decl. Ex. 2, last page), the addendum clearly

10

states that the amount to be "Paid directly to Everest Business" is "$0.00." *Id.* The addendum includes deductions for fees for the 2021 Agreement but unmistakably lacks any payoff for any previous agreement, directly contradicting the SAC. *Id.* This is consistent with Everest's records (Reyes Decl. ¶ 4 & Ex. A) and must be consistent with Plaintiffs' own records. The most elementary investigation would have dissuaded counsel from misstating the payment history.

Plaintiffs' purpose is clear: they seek to tarnish Everest as a predatory lender which "trap[s]" its merchants in a "vicious cycle from which [they] were never meant to escape." (SAC ¶ 87.) This is the exact sort of "stigmatizing effect," *LCS Grp.*, 2019 WL 1234848, at *15, Rule 11 rightfully punishes when the RICO allegations are not just unsupported but directly contradicted by Plaintiffs' own submission.

### B. Plaintiffs Falsely Claim They Paid "Thousands of Dollars of Unlawful Debt."

Second, Plaintiffs cannot responsibly allege they paid "thousands of dollars of unlawful debt" (SAC ¶ 67) when in fact they have made a profit on their transactions with Everest. In light of the Court's holding on the usury issue, Plaintiffs have paid no "unlawful debt." In fact, between the two agreements, Streamlined is $91,424.11 in the black. Streamlined received $225,615 from the two agreements, after subtracting transactional fees. (Reyes Decl. ¶¶ 4-5; 2019 Agreement at 14; 2021 Agreement at 1.) Streamlined paid its $108,800 obligations under the 2019 Agreement and then made 21 payments of $1,209.09—$25,390.89—under the 2021 Agreement, for a total of $134,190.89.[6] (Reyes Decl. ¶¶ 4, 6 & Exs. A-B.) Far from having paid an "unlawful debt," Streamlined is nearly a hundred thousand dollars ahead.

---

[6] In Everest's motion to dismiss, where all reasonable inferences must be given to the non-movant, Everest posited that Plaintiffs are ahead at minimum $58,778.68, based on assuming Streamlined remitted the 2021 Agreement's $1,209.09 daily payment each of the 48 days

11

## CONCLUSION

For all the foregoing reasons, the Court should grant Everest's motion for sanctions and impose sanctions on Plaintiffs and Plaintiffs' counsel pursuant to Fed. R. Civ. P. 11.

Dated: New York, New York
December 21, 2022

Respectfully submitted,

/s/ David A. Picon
David A. Picon
Matthew J. Morris
William G. Fassuliotis
**PROSKAUER ROSE LLP**
11 Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
E-mail: dpicon@proskauer.com
mmorris@proskauer.com
wfassuliotis@proskauer.com

*Attorneys for Defendant EBF Holdings, LLC*

---

between the May 21, 2021 funding date and the July 8, 2021 date of their filing the lawsuit. In actuality, Streamlined defaulted over a week earlier on June 28, 2021.