UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STREAMLINED CONSULTANTS, INC. d/b/a
STREAMLINED CONSULTANTS; AND MOSHE
SCHOENWALD,

                        Plaintiffs,

      - against -

EBF HOLDINGS, LLC d/b/a EVEREST BUSINESS
FUNDING d/b/a EBF,

                        Defendant.

---

Case No. 7:21-cv-9528-KMK

**Oral Argument Requested**

# REPLY MEMORANDUM OF LAW IN SUPPORT OF EBF HOLDINGS, LLC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

PROSKAUER ROSE LLP
David A. Picon
Matthew J. Morris
William G. Fassuliotis
11 Times Square
New York, NY 10036-8299
(212) 969-3000

*Attorneys for Defendant EBF
Holdings, LLC*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

    I.    THE SAC DOES NOT PLEAD ALL NECESSARY ELEMENTS FOR RICO. ................................................................................................................................ 3

        A.    Neither Allegations of Fraud Nor the Inclusion of Fees Make the Agreements Unlawful Debts. ............................................................................. 3

        B.    Plaintiffs Have Not Pleaded Wire Fraud. ................................................... 6

        C.    Plaintiffs' "Enterprise" Allegations Are Deficient. ................................... 7

        D.    Plaintiffs Have No Injury under RICO § 1964(c). ..................................... 8

        E.    Plaintiffs' RICO § 1962(d) Count Fails Because the Underlying § 1962(c) Claim Fails and Because the SAC Lacks Plausible Allegations. ................................................................................................... 9

    II.    PLAINTIFFS' COMMON LAW FRAUD COUNT FAILS TO STATE A CLAIM. ............................................................................................................................ 9

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Com. Union Assurance Co. v. Milken*,
 17 F.3d 608 (2d Cir. 1994) ................................................................................................8

*Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*,
 755 F.2d 239 (2d Cir. 1985) ..............................................................................................4

*Haymount Urgent Care PC v. GoFund Advance, LLC*,
 2022 WL 2297768 (S.D.N.Y. June 27, 2022) ...................................................................7

*Slamow v. Del Col*,
 79 N.Y.2d 1016, 594 N.E.2d 918 (1992) ..........................................................................5

*United States v. Moseley*,
 980 F.3d 9 (2d Cir. 2020),
 *cert. denied*, 141 S. Ct. 1442 (2021) .............................................................................4, 5

*United States v. Weaver*,
 860 F.3d 90 (2d Cir. 2017) ................................................................................................6

**STATUTES**

18 U.S.C. § 1962 .......................................................................................................................1, 8

18 U.S.C. § 1964 .......................................................................................................................2, 8

N.Y. Gen. Oblig. Law § 5-521 .....................................................................................................9

# PRELIMINARY STATEMENT

Everest demonstrated in its moving brief that the SAC should be dismissed because: (1) Plaintiffs' claim under RICO § 1962(c) fails for three independent reasons – it does not state a claim for collecting on an unlawful debt or for wire fraud, it fails to plead adequate allegations of a distinct enterprise, and alleges no injury to Plaintiffs' business and property (MTD Mv. Br. at 8-17); (2) their RICO conspiracy claim fails due to the inadequacy of their underlying § 1962(c) claims and because the conspiracy allegations are conclusory in any event (*id.* at 17-18); and (3) their common law fraud claim fails because it is precluded by New York's General Obligations Law because, notwithstanding how Plaintiffs have titled it, the underlying claim is for usury and, even if it were treated as a claim for fraud, the allegations fail to state a cognizable claim (*id.* at 18-20).[1] In their Opposition, when Plaintiffs actually address Everest's arguments – which in most instances they do not – the responses are a mix of conclusory assertions, non-sequiturs or simply contrary to applicable law.

Plaintiffs try to defend their claim that the 2021 Agreement is an unlawful debt – despite the Court's holding that the 2021 Agreement is not a loan – by advancing a spurious theory of "unlawful debt based on fraudulent inducement." This argument is unsupported and finds no basis in the text of RICO or the case law. To the contrary, it flies in the face of settled law. The Court has previously held that the Agreements are sales, not loans, so, by definition, they do not charge *interest* period, much less interest in excess of the legal rate, as unlawful debt as defined by RICO requires. (Point I.A.)

---

[1] The abbreviations used herein are the same as in Everest's moving brief ("MTD Mv. Br.," ECF No. 30); Plaintiffs' opposition (ECF No. 38) is abbreviated as "MTD Opp."

Second, Plaintiffs attempt to defend their alternative RICO theory of wire fraud by pointing to allegations they contend support a purported scheme to defraud. These allegations are flatly inconsistent with the 2021 Agreement itself and, more specifically, the Court's prior interpretation of that agreement. But even if the allegations were true, Plaintiffs have no response to Everest's argument that what is alleged are actually non-actionable legal conclusions, not factual averments. (Point I.B.)

Third, Plaintiffs purport to clarify their muddled and self-contradictory allegations about the purported enterprise, settling on Everest "[a]s the enterprise," and "Mr. Crockett," as the alleged "person." MTD Opp. at 7. But under this enterprise theory, Mr. Crockett (who has still not been served) should be (but is not) the only Defendant. Everest, the purported enterprise, is alleged to be a RICO defendant. SAC ¶ 79. Moreover, Plaintiffs' allegations against Mr. Crockett are all made on information and belief and are conclusory and insufficient to support a RICO claim. (Part I.C.)

Fourth, Plaintiffs ignore Everest's authority holding that a plaintiff that has broken even or profited from their transactions cannot satisfy RICO's injury requirement. Instead, Plaintiffs assert, without citation to any factual averment, that it cannot be true that they made money on the transaction.[2] As demonstrated in the moving papers, the allegations in the SAC and the agreements annexed to it eliminate any claim that Plaintiffs did not profit from the transaction. As such, there is no injury to their business or property as required by 18 U.S.C. § 1964(c). (Part I.D.)

---

[2] In its opposition to Everest's Rule 11 Motion for Sanctions ("R. 11 Opp.," ECF No. 37), Plaintiffs seemingly concede it made a profit, but suggest it is somehow not dispositive, stating: "Defendant fails to understand that both Plaintiff making a profit but also paying thousands of debts can be simultaneously true." R. 11 Opp. at 8.

Fifth, Plaintiffs erroneously claim that Everest's only challenge to their 1962(d) conspiracy claim is that the underlying merits fail.  Not true.  While the underlying claims do indeed fail, Everest also showed Plaintiffs lacked plausible allegations regarding Defendants' agreement to participate in the alleged underlying violation.  (Part I.E.)

Finally, Plaintiffs' common law fraud claim also is legally deficient.  The Opposition fails to understand that the bar on a corporation or its guarantor bringing affirmative claims of usury does not depend on the title given by Plaintiffs to the claim for relief but the underlying substance of the claim.  The Court made this clear in its prior decision.  Op. at 8-10.  But even if the claim was not precluded as a matter of law, Plaintiffs fail to respond (and there is no response) to Everest's other arguments as to why the fraud claim fails on the merits.  (Part II.)

## ARGUMENT

### I. THE SAC DOES NOT PLEAD ALL NECESSARY ELEMENTS FOR RICO.

#### A. Neither Allegations of Fraud Nor the Inclusion of Fees Make the Agreements Unlawful Debts.

The Court has made "clear" that the 2021 Agreement "is not a loan because [Everest] is not absolutely entitled to repayment under all circumstances," and therefore the 2021 Agreement cannot be usurious.  Op. at 11.  Everest demonstrated that this holding was the law of the case and nothing alleged in the SAC in any way alters the Court's analysis.  MTD Mv. Br. at 8-11.  Plaintiffs nevertheless attempt to distinguish the Court's prior holding as only "address[ing] whether the terms and conditions of the Agreement purports to be a loan or funding-based agreement," asserting "if the debt was obtained by means of material misrepresentation, . . . then the debt is no longer lawful," and "[f]or the debt to be lawful, . . . [it] must have been lawfully bargained for and free of fraud."  MTD Opp. at 4-5.  These unsupported and illogical assertions are without merit.  Indeed, they are flatly inconsistent with applicable law.

The law is clear: if the Agreements are sales rather than loans (as the Court has previously held), they cannot possibly be the basis for an unlawful debt claim under RICO, as such a claim requires evidence of a charge of interest in excess of the legal rate. *See Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 248 (2d Cir. 1985) ("unlawful debt" RICO claim requires proof that the debt was "unenforceable" under state usury laws and included interest at a rate at least twice the lawful rate). Everest cited § 1961(6) and quoted *Durante* in its moving brief, but Plaintiffs made no effort to address, much less counter, either. Whatever it may be, Plaintiffs' "Unlawful Debt Based Upon Fraud" claim (MTD Opp. at 4) does not qualify as unlawful debt as defined by RICO. Whether a debt is unlawful depends on whether the debt is usurious, which the Court has already deemed the 2021 Agreement is not.[3]

Plaintiffs specifically contend that the fees Everest charges in its agreements are "fraudulent." MTD Opp. at 5. They state such charges and fees can make an agreement usurious, pointing to two things: a 2015 press release from a United States Attorney's Office charging an individual with criminal RICO, and *United States v. Moseley*, 980 F.3d 9 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 1442 (2021), which upheld the conviction of an individual found guilty of criminal RICO. *Id.* Neither supports Plaintiffs' argument.

The press release concerns the indictment of a pay-day lender who was found to have provided *loans*. It has nothing to do with a revenue-based funding agreement, much less Everest's form of agreement, which the Court has already held was not a loan. ECF 37-1.[4]

---

[3] Notably, Plaintiffs acknowledge in their Rule 11 opposition that if "the debt is lawful, then RICO cannot apply . . . ." R. 11 Opp. at 5.

[4] Plaintiffs submitted the press release as part of their opposition to Everest's Rule 11 motion, not its motion to dismiss, but Plaintiffs nonetheless refer to the press release in their opposition brief to the motion to dismiss. MTD Opp. at 5. Accordingly, Everest treats the press release as if it had been filed as part of Plaintiffs' papers on this motion.

Moreover, a press release is not a pleading, much less an adjudication. It would not be probative of anything even in the pay-day lending context.

*Moseley* likewise is of no assistance to Plaintiffs. In that case, the criminal defendant operated a pay-day loan business which offered small-dollar and short-term loans, and, instead of charging a traditional interest rate, charged the borrower fees based on the amount borrowed, which fees were construed as interest and such interest being in excess of the usury limit. *Moseley*, 980 F.3d at 14. The defendant was convicted of multiple offenses, including RICO and wire fraud. As relevant to the RICO conviction, *Moseley* is easily distinguishable as the defendant did not challenge whether the loans he offered were in fact loans nor did he challenge whether fees could be construed as interest. Rather, he challenged which jurisdiction's usury laws applied – the laws of New York, where the fees he charged would exceed the legal interest rate, or the laws of some other state or country without usury laws. *Id.* at 17-24.[5] In contrast, here, the parties agree that New York law applies, as does the Court. Op. at 8 n.3. And again, the Court has held that, under New York law, the 2021 Agreement is not a loan. *Id.* at 14.

Finally, Plaintiffs try to construct a distinction between the "facial" or "express terms" of the 2021 Agreement and the "actual execution and intent of the contract." MTD Opp. at 5-6. In doing so, Plaintiffs demonstrate a misunderstanding of the applicable *Principis* test and the Court's application of it to the terms of the 2021 Agreement. While the Court noted the 2021 Agreement proclaimed to have "no interest rate" (Op. at 2 n.2), the Court did not stop there. The Court looked at the 2021 Agreement as a whole in order to establish that it was not a loan and therefore could not be usurious. Op. at 10-14. One can only know the substance and intent of

---

[5] The defendant also challenged his RICO conviction on grounds of due process and lack of scienter, which are also not relevant here.

the contract by looking at its terms. *See Slamow v. Del Col*, 79 N.Y.2d 1016, 1018, 594 N.E.2d 918, 919 (1992) ("The best evidence of what parties to a written agreement intend is what they say in their writing."). If the "actual execution" did not live up to terms of the agreement – a claim that the SAC does not allege – then, at most, Plaintiffs would have a breach of contract claim, not a RICO claim.

### B. Plaintiffs Have Not Pleaded Wire Fraud.

In its moving brief, Everest demonstrated that, to the extent Plaintiffs were attempting to plead a pattern of racketeering activity through wire fraud as an alternative RICO theory, it too failed because Plaintiffs did not allege any false material representation or omission, and, in any event, nothing they seemingly relied upon was false. MTD Mv. Br. at 11-13. In response, Plaintiffs quote various paragraphs of their complaint which concern allegations of "*unlawful lending and debt collection*" by means of "a phony MCA" with "mistitled terms" and "misleading terminology" which are "intentionally included to mislead the courts" and "evade the law." MTD Opp. at 6-7 (emphasis added).[6] Once again, the Court has already decided that the 2021 Agreement's terms evidence a sale of receivables (*i.e.*, not a loan). The Court found nothing "phony," identified no "misleading" terms, nor even remotely suggested that anything in the Agreement sought to mislead it. Actually, what the Court held was that it is Plaintiffs who attempted to mislead the Court through their "factual inaccuracies in Plaintiffs' allegations as to the Funding Agreement in the FAC," and "in considering the Funding Agreement, it easily becomes clear that many of the Funding Agreement's terms flatly contradict Plaintiffs' allegations concerning those terms." Op. at 2 n.2.

---

[6] Plaintiffs cite no cases in this section other than *United States v. Weaver*, 860 F.3d 90 (2d Cir. 2017), which is cited only for the elements of wire fraud and contains facts far removed from the case here.

Nor do Plaintiffs even attempt to explain how Everest could have intentionally misled Plaintiffs when scores of cases have upheld the legality of revenue-based funding agreements, both in the industry at large and Everest's own contracts. Op. at 14 (citing cases).

In its Moving Brief, Everest also showed that allegations concerning the legal significance of a document (i.e., whether something is a loan or a purchase and sale) are not statements of fact, but rather a non-actionable legal conclusion. And here the Court has already issued its legal conclusion (*i.e.*, that the Agreement is a sale, not a loan) and, as such, the statement is in no event false. Plaintiffs offer no response to either of these points. MTD Mv. Br. at 12.

Finally, Everest explained that any cause of action arising out of non-performance related to allegedly excessive fees would, at most, sound in contract, not fraud. *See Haymount Urgent Care PC v. GoFund Advance, LLC*, 2022 WL 2297768, at *14 (S.D.N.Y. June 27, 2022). Plaintiffs offer a bizarre (and illogical) response; namely, that Everest's "defense is part of the scheme" by which companies like Everest "hide behind breach of contract claims." MTD Opp. at 7. It is unclear why any entity would order their affairs so that it could "defend" its actions in a way which would result in civil liability, or how, even if it did so, this would result in wire fraud.

### C. Plaintiffs' "Enterprise" Allegations Are Deficient.

Everest demonstrated that, while it was unclear which of three possible enterprise theories the SAC might be attempting to articulate, none stated a cognizable claim. MTD Mv. Br. at 13-15. In response, Plaintiffs assert they have only one theory: Everest "is the enterprise," which is "separate from Mr. Crockett," the alleged RICO person. MTD Opp. at 7. If indeed that

is Plaintiffs' theory, then Mr. Crockett (who has not been served[7]) should be the only defendant against whom damages are sought for the RICO claims, but those claims are asserted against Everest as well. SAC ¶ 79 ("All Defendants are 'persons' within the meaning of" RICO.) In any event, Plaintiffs offer no response to Everest's showing that their allegations as to Mr. Crockett, all made on information and belief, are conclusory and devoid of factual averments sufficient to state a claim. MTD Mv. Br. at 14-15. Accordingly, there is therefore no adequate allegation of a RICO "person" conducting the affairs of an "enterprise" as required by 18 U.S.C. § 1962(c).

### D. Plaintiffs Have No Injury under RICO § 1964(c).

In its moving brief, Everest cited numerous cases for the proposition that plaintiffs who have broken even on or profited from their transactions cannot meet RICO's injury requirement. MTD Mv. Br. at 16-17. In their Opposition, Plaintiffs do not even acknowledge this authority, much less identify a single case to the contrary. MTD Opp. at 7-8. Instead, Plaintiffs offer the conclusory assertion that "it simply cannot be true" that "Plaintiff has made money on the transaction." MTD Opp. at 8. They do not (and cannot) support that assertion by pointing to a single well-pleaded allegation in the SAC, or any declaration by Schoenwald. Thus, Everest's point is uncontested: even giving the benefit of all reasonable inferences, Plaintiffs are still nearly $60,000 in the black. MTD Mv. Br. at 17.

Plaintiffs' other defense – that even if they did make money, this "does not preclude the fact that Defendants collected on an unlawful debt" (MTD Opp. at 8) – is a non sequitur. RICO requires Plaintiffs to allege an injury to their business or property. 18 U.S.C. § 1964(c). There is no such injury when Plaintiffs have in fact profited from the agreement. *See, e.g.*, *Com. Union Assurance Co. v. Milken*, 17 F.3d 608, 612 (2d Cir. 1994).

---

[7] Rule 4(m)'s 90-day time limit has since passed without Plaintiffs serving Mr. Crockett.

### E. Plaintiffs' RICO § 1962(d) Count Fails Because the Underlying § 1962(c) Claim Fails and Because the SAC Lacks Plausible Allegations.

Plaintiffs erroneously claim that Everest's "only contention" opposing their RICO conspiracy claim is that the underlying RICO claim fails. MTD Opp. at 8. Even if that were true, it would not help Plaintiffs, because, as previously demonstrated, the underlying claims do fail. Furthermore, as Everest showed in its moving brief, "even if the underlying offense had been alleged, the conspiracy claim would still fail because it does not plausibly allege each Defendant knowingly agreed to participate in the underlying violation." MTD Mv. Br. at 18. Once again, Plaintiffs offered no response to Everest's arguments. Their RICO conspiracy claims fails for this reason, independent of the merits of the alleged underlying offense.

## II. PLAINTIFFS' COMMON LAW FRAUD COUNT FAILS TO STATE A CLAIM.

Everest demonstrated that Plaintiffs' fraud count should be dismissed because it is precluded by New York General Obligations Law § 5-521 as it is a claim for affirmative relief based on allegations of usury, and, even if it was not precluded, Plaintiffs cannot allege any false statement or out-of-pocket loss. MTD Mv. Br. at 18-20. Plaintiffs first respond, without authority, that because their claim is based upon fraud, not usury, the General Obligations Law does not apply. MTD Opp. at 8. But the bar on affirmative claims of usury depends on the substance of the claim, not the title given to it by a party. Plaintiffs' claims for relief in the FAC were for rescission and declaratory relief, not usury, but because both claims "rest[ed] on Plaintiffs' claim that the Funding Agreement is criminally usurious," the General Obligations Law precluded those claims. Op. at 9. In Plaintiffs' own words, "the relevant cause of action [in the SAC] is fraud to avoid and/or hide *criminal usury*." MTD Opp. at 8 (emphasis added). In other words, the claims rest on whether the 2021 Agreement is usurious or not, an issue already decided against Plaintiffs.

Finally, Plaintiffs simply do not address Everest's other points as to the merits of the so-called fraud claim which demonstrate that: (1) any alleged failure to perform services would sound in contract, not fraud; (2) the fees Everest charged were plainly disclosed on the face of the Agreements and therefore cannot be fraudulent; and (3) Plaintiffs cannot meet the injury requirement. MTD Mv. Br. at 19-20. In short, Plaintiffs' common law fraud claim should be dismissed as well.

## CONCLUSION

For all the foregoing reasons, Everest's motion to dismiss should be granted and Plaintiffs' Second Amended Complaint should be dismissed *with prejudice* in accordance with this Court's Individual Rule II.A.

Dated: New York, New York
February 7, 2023

Respectfully submitted,

*/s/ David A. Picon*
David A. Picon
Matthew J. Morris
William G. Fassuliotis
**PROSKAUER ROSE LLP**
11 Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
E-mail: dpicon@proskauer.com
mmorris@proskauer.com
wfassuliotis@proskauer.com