UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STREAMLINED CONSULTANTS, INC. d/b/a
STREAMLINED CONSULTANTS,
*and* MOSHE SCHOENWALD,

                              Plaintiffs,

        v.

EBF HOLDINGS, LLC d/b/a EVEREST BUSINESS
FUNDING d/b/a EBF, *et. al.*,

                              Defendant.

No. 21-CV-9528 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Scott C. Levenson, Esq.
Levenson Law
New York, NY
*Counsel for Plaintiffs*

Matthew J. Morris, Esq.
William Fassuliotis, Esq.
David A. Picon, Esq.
Proskauer Rose LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Plaintiffs Streamlined Consultants, Inc. d/b/a Streamlined Consultants ("SCI") and

Moshe Schoenwald ("Schoenwald," collectively "Plaintiffs") filed the instant Action against

EBF Holdings, LLC d/b/a Everest Business Funding ("EBF" or "Defendant"), Scott Crockett

("Crockett"), John Does 1-5, and ABC Corporations 1-5 (collectively, "Defendants"), alleging

violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.

§ 1962(c), one count of a RICO conspiracy, 18 U.S.C. § 1962(d), as well as a claim for common-law fraud against EBF.  (*See* Second Am. Compl. ("SAC") (Dkt. No. 18).)[1]

Before the Court are two Motions filed by EBF: first, a Motion to Dismiss the Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6), (*see* Not. of Mot. ("MTD Not. of Mot.") (Dkt. No. 29)); and a Motion for Sanctions against Plaintiffs and Plaintiffs' Counsel pursuant to Federal Rule of Civil Procedure 11, (*see* Not. of Mot. ("Sanctions Not. of Mot.") (Dkt. No. 32)).  For the foregoing reasons, both Motions are granted.

## I.  Background

### A.  Factual Background

SCI is a New York corporation; Schoenwald is the principal of SCI.  (*See* SAC ¶¶ 14–15.)  EBF is a Delaware limited liability company, with its principal place of business in Doral, Florida.  (*See id*. ¶ 16.)  Plaintiffs allege upon information and belief that Crockett is the CEO of EBF, and is also located in Doral, Florida.  (*Id*. ¶ 18.)  In addition, Plaintiffs allege that John Does 1-5 and ABC Corporations "are unknown entities involved in the procurement, enforcement[,] and collection" of an agreement as discussed in further detail below.  (*Id*. ¶ 19.)

As relevant to the instant Action, the Parties entered a revenue-based funding agreement (the "2021 Funding Agreement") on May 21, 2021, by which EBF purchased $199,500 worth of SCI's future receipts for a purchase price of $150,000; Schoenwald served as a guarantor.  (*See* SAC Ex. A ("Funding Agreement 1"), at 1 (Dkt. No. 18-1).)[2]  The 2021 Funding Agreement was

---

[1] As of the time of this filing, Plaintiffs have not served Crockett nor has anyone appeared on his behalf.  (*See generally* Dkt.)  As such, when the Court refers to a singular "Defendant" throughout the Opinion, the Court is referencing EBF as the only party who has appeared in the instant Action.

[2] As in this Court's previous Opinion, (*see* Op. & Order ("Op.") 2 n.2 (Dkt. No. 17)), the Court must again address the factual inaccuracies in Plaintiffs' allegations as to the funding

2

designed to sell to EBF a 15% cut of SCI's future receipts, which would be automatically withdrawn from SCI's bank account on a daily basis.  (*See id.* at 1–2.)  But instead of forcing the Parties to calculate the precise dollar amount to be withdrawn on a daily basis, the 2021 Funding Agreement provided for a daily payment of $1,209.09 based on SCI's monthly average sales and the average weekdays in a calendar month.  (*See id.* at 1.)  In recognition of the fact that this agreed-upon daily payment amount may not always reflect 15% of SCI's actual receipts, however, the 2021 Funding Agreement also provided for a process by which SCI could request at the end of each calendar month that EBF reconcile SCI's actual receipts "by either crediting or debiting the difference back to or from [SCI's bank account] so that the amount [EBF] debited in the most recent calendar month equaled" 15% of SCI's actual receipts.  (*Id.* at 2.)  If SCI requested reconciliation and followed the proper procedures, then Everest was required to reconcile SCI's actual receipts.  (*See id.* ("Within four business days of [EBF's] reasonable verification of [the necessarily information for reconciliation], [EBF] *shall* reconcile [SCI's] actual receipts." (emphasis added)).)

---

agreements referenced in the SAC.  While it is, of course, correct that on a motion to dismiss, courts are instructed to "not only accept all factual allegations as true but also draw all reasonable inferences in the plaintiff's favor," *Division 1181 Amalgamated Transit Union-N.Y. Employees Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam) (quotation marks omitted), it is also well-settled that "[i]f a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true," *Owolabi v. Bank of America, N.A.*, No. 18-CV-3991, 2019 WL 463849, at *2 (S.D.N.Y. Feb. 6, 2019) (quoting *Ace Sec. Corp. Home Equity Loan Tr., Series 2007-HE3 ex rel. HSBC Bank USA, Nat'l Ass'n v. DB Structured Prods., Inc.*, 5 F. Supp. 3d 543, 551 (S.D.N.Y. 2014)).

        Here, the SAC heavily relies on two funding agreements, (*see, e.g.*, SAC ¶¶ 20–56), which are also attached to the SAC, (*see* Funding Agreement 1; SAC Ex. B ("Funding Agreement 2") (Dkt. No. 18-2)).  Thus, there is no question that the Court may consider the funding agreements themselves in ruling on the Motion.  Therefore, in reciting the relevant facts as to the funding agreements, the Court refers primarily to the agreements themselves and not the SAC.  *See Owolabi*, 2019 WL 463849, at *2.

The 2021 Funding Agreement makes clear that "[SCI] is selling a portion of a future revenue stream to [EBF] at a discount, not borrowing money from [EBF]," and therefore, "[EBF] assumes the risk that [f]uture [r]eceipts will be remitted more slowly than [EBF] may have anticipated or projected because [SCI's] business has slowed down, or the full [p]urchased [a]mount may never be remitted because [SCI's] business went bankrupt or otherwise ceased operations in the ordinary course of business." (*Id.* at 5; *see also id.* at 2 (EBF acknowledging that "[t]here is no interest rate or payment schedule and no time period during which the [p]urchased [a]mount must be collected by [EBF]" and that "[EBF] is entering into this [Funding] Agreement knowing the risks that [EBF's] business may slow down or fail, and [EBF] assumes these risks based on [SCI's] representations[,] warranties[,] and covenants in this [Funding] Agreement, which are designed to give [EBF] a reasonable and fair opportunity to receive the benefit of its bargain").) Failure to satisfy the daily payment amount on a single occasion does not, on its own, constitute default under the terms of the 2021 Funding Agreement. (*See id.* at 6–7.) Moreover, SCI's potential future declaration of bankruptcy does not, on its own, constitute default under the terms of the 2021 Funding Agreement—or even breach of the 2021 Funding Agreement. (*See id.*; *see also id.* at 3 ("[SCI] going bankrupt or going out of business, in and of itself, does not constitute a breach of this Agreement").) Rather, the 2021 Funding Agreement specifies that failure to satisfy the daily payment amount will only constitute default when "[SCI] fails to provide timely notice to [EBF] such that in any given calendar month there are five consecutive ACH transactions attempted by [EBF] that are rejected by [SCI's] bank and [SCI] fails to communicate and/or provide documentary evidence satisfactory to [EBF] for the failed transactions or failed remittance." (*Id.* at 7.)

Plaintiffs cite this funding agreement, as well as other dealings between SCI and EBF, to allege evidence of both RICO acts and a RICO conspiracy between EBF, an unnamed Broker, and Crockett to induce Plaintiffs into a "usurious loan." (*See* SAC ¶¶ 1–9; 20–22.)  Plaintiffs allege that, through an unnamed Broker who "was an agent or employee" of EBF, (*id*. ¶ 3), Plaintiffs entered into the 2021 Funding Agreement, (*id*. ¶ 4).  Plaintiffs further allege that, "unbeknownst to Plaintiff[s,] the agreement . . . entered into was not a bona fide [Funding Agreement] but rather a usurious loan that charged an APR of 230.5%." (*Id*. ¶ 6.)  Specifically, Plaintiffs allege that the 2021 Funding Agreement is intentionally "mistitled" as "Payments Rights Purchase and Sale Agreement," and instead, is actually a loan.  (*Id*. ¶ 20; *see also id*. ¶¶ 23–31 (describing the "loan" and its alleged repayment terms).)  Plaintiffs allege that as a loan agreement, the 2021 Funding Agreement is actually usurious because, if one were to divide the purchased amount of $199,500 by the daily payment of $1,209.09 (and ignore the reconciliation provision), one could conclude that "repayment" is due within 165 days under the 2021 Funding Agreement; this yields a usurious annual interest rate of 230.5%.  (*See id*. ¶¶ 6, 27–32.)

Plaintiffs cite two other examples of their dealings with EBF to allege that Defendants' conduct represents a "business model [which] employs a phony [funding agreement] as a smokescreen for unlawful lending and debt collection." (*Id*. ¶ 9.)  First, Plaintiffs point to an earlier agreement between SCI and EBF, entered into on October 11, 2019 (the "2019 Funding Agreement").  (*Id*. ¶ 21; *see also* Funding Agreement 2.)  The revenue-based funding agreement—which is similar to the 2021 Funding Agreement—states that EBF purchased $108,800 worth of SCI's future receipts for a purchase price of $80,000 and Schoenwald again served as a guarantor.  (*See* Funding Agreement 2 at 1.)  Plaintiffs do not appear to allege that this earlier agreement is usurious, (*see generally* SAC), but they again allege that if one were to

divide the purchased amount of $108,000 by the daily rate of payment of $908.67 (and again, ignore the reconciliation provision), one could conclude that the "loan" has an interest rate of 109.5%, (*see id.* ¶ 21).  However, as relevant to the instant Action, Plaintiffs allege that in the 2021 Funding Agreement, "Plaintiff[s] [were] required to pay off the balance of the previous loan with a portion of the proceeds" from the 2019 Funding Agreement "[a]s a condition of the loan."  (*Id.* ¶ 24; *see also id.* ¶ 33; Funding Agreement 2, at 16 ("As part of the conditions of this purchase of future payment rights, it is required that the current balance of the advance owed to [EBF], be paid off entirely.  In the event the current advance has pending payments, once those payments clear they shall be applied to the Purchase Amount of the new advance as a lump sum[.]").)  Second, Plaintiffs allege that "before entering into the [2021 Funding] Agreement in question, Plaintiffs received over 130 emails soliciting Plaintiffs to engage in further loans" beginning around October 15, 2020 through at least March 15, 2021.  (*Id.* ¶ 22.)[3]

---

[3] Plaintiffs purport to attach an example of one such email as Exhibit C.  (*See* SAC Ex. C (Dkt. No. 18-3).)  However, Plaintiffs' exhibit is illegible—the attached email includes less than half of the email itself.  (*See id.*)  The email appears to be a "pre-approval" offer of some sort from "Everest Funding Loyalty Program," approving the email recipient for what appears to be "up to two hundred thousand dollars."  (*Id.*)

Regardless of the legibility of the Exhibit, the Court accepts Plaintiffs' allegation as true that Plaintiffs received these emails as alleged in the SAC.  *See Div. 1181*, 9 F.4th at 94.

B.  Procedural History

Plaintiffs initiated this Action with the filing of a summons and verified complaint in

New York Supreme Court for the County of Rockland ("Rockland County Court") on July 8,

2021.  (*See* Summons (Dkt. No. 1-1); Compl. (Dkt. No. 1-2).)  On October 22, 2021, Plaintiffs

filed a first amended complaint, also in Rockland County Court.  (*See* First Am. Compl. ("FAC")

(Dkt. No. 1-4).)  On October 28, 2021, Plaintiffs' summons was signed, (*see* Dkt. No. 1-6), and

on November 17, 2021, Defendant removed the Action to this Court on the basis of this Court's

diversity jurisdiction, (*see* Not. of Removal (Dkt. No. 1)).

On November 22, 2021, EBF filed a pre-motion letter in anticipation of moving to

dismiss the FAC.  (*See* Dkt. No. 7.)  After receiving a response from Plaintiffs, (*see* Dkt. No. 8),

the Court held a pre-motion conference and adopted a briefing schedule, (*see* Dkt. (minute entry

for Jan. 24, 2022); Dkt. No. 11).  On January 31, 2022, EBF filed its Motion To Dismiss.  (*See*

Not. of Mot. (Dkt. No. 12); Def's Mem. of Law in Supp. of Mot. (Dkt. No. 13); Decl. of David

A. Picon in Supp. of Mot. (Dkt. No. 14).)  On February 28, 2022, Plaintiffs filed their

Opposition, (*see* Pls' Mem. of Law in Opp'n to Mot. (Dkt. No. 15)), and on March 14, 2022,

EBF filed its Reply, (*see* Def's Reply Mem. of Law in Supp. of Mot. (Dkt. No. 16)).  On

September 20, 2022, the Court issued an Opinion and Order granting EBF's motion to dismiss in

its entirety.  (Op.)

On October 20, 2022, Plaintiffs filed the SAC.  (*See* SAC.)  On November 2, 2022, EBF

filed a pre-motion letter in anticipation of moving to dismiss the FAC, as well as moving for

sanctions against Plaintiffs.  (*See* Dkt. No. 19).  After receiving responses from Plaintiffs, (*see*

Dkt. Nos. 21, 23), the Court held a pre-motion conference and adopted a briefing schedule, (*see*

Dkt. (minute entry for Nov. 29, 2022); Dkt. Nos. 26, 28).  On December 22, 2022, EBF filed its

Motion To Dismiss.  (*See* MTD Not. of Mot.; Def's Mem. of Law in Supp. of Mot. ("EBF MTD Mem.") (Dkt. No. 30); Decl. of David A. Picon in Supp. of Mot. ("Picon MTD Decl.") (Dkt. No. 31).)  On January 23, 2023, Plaintiffs filed their Opposition.  (*See* Pl's Mem. of Law in Opp'n to Mot. ("Pl's MTD Mem.") (Dkt. No. 38).)  On February 7, 2023, EBF filed its Reply. (*See* Def's Reply Mem. of Law in Supp. of Mot. ("Def's MTD Reply") (Dkt. No. 39).)

On January 10, 2023, EBF also filed its Motion for Sanctions.  (*See* Sanctions Not. of Mot.; Def's Mem. of Law in Supp. of Mot. ("EBF Sanctions Mem.") (Dkt. No. 33); Decl. of David A. Picon in Supp. of Mot. ("Picon Sanctions Decl.") (Dkt. No. 34); Decl. of Alexandra Reyes in Supp. of Mot. ("Reyes Decl.") (Dkt. No. 35).)  On January 23, 2023, Plaintiffs filed their Opposition.  (*See* Pl's Mem. of Law in Opp'n to Mot. ("Pl's Sanctions Mem.") (Dkt. No. 37).)  On February 7, 2023, EBF filed its Reply.  (*See* Def's Reply Mem. of Law in Supp. of Mot. ("Def's Sanctions Reply") (Dkt. No. 40).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although, "once a claim has

been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a

claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[]

across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also*

*Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.  But where the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation

omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79. ("Rule 8 marks a notable and generous

departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the

doors of discovery for a plaintiff armed with nothing more than conclusions.").

 "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam), and "draw all reasonable inferences in the plaintiff's favor," *Div. 1181*, 9 F.4th at 95

(citation omitted).  Additionally, "when ruling on a Rule 12(b)(6) motion to dismiss," district

courts are directed to confine their consideration to "the complaint in its entirety, . . . documents

incorporated into the complaint by reference, and matters of which a court may take judicial

notice."  *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotation marks omitted); *see also*

*Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).

 Finally, fraud claims—including common law fraud claims—are subject to the

heightened pleading standard set forth in Rule 9(b).  *See Matana v. Merkin*, 957 F. Supp. 2d 473,

484 (S.D.N.Y. 2013) ("[A] claim for common law fraud under New York law must satisfy the requirements of the heightened pleading standard under Federal Rule of Civil Procedure 9(b)." (collecting cases)).  Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. P. 9(b).  However, courts "'must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations,'" rather "'[P]laintiffs must allege facts that give rise to a strong inference of fraudulent intent.'"  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52, (2d Cir. 1995)).  "An inference is 'strong' if it is cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Pilkington N. Am. Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 460 F. Supp. 3d 481, 492 (S.D.N.Y. 2020) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC, 797 F.3d 160, 176–77 (2d Cir. 2015)).  As explained by the Second Circuit, Rule 9(b) requires a plaintiff to "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *Loreley*, 797 F.3d at 171 (citation omitted).

B.  Analysis

Plaintiffs allege in the SAC that Defendants engaged in a "conspiracy . . . to violate RICO and to defraud Plaintiffs by forcing them through misleading terminology[,] and by forcing Plaintiffs[,] to use proceeds from [a loan] to pay off [a] previous loan," (*see* SAC ¶ 34), by "collect[ing] debts arising from its false [agreements]—including the agreement between the parties to this action—[by] charging a true interest rate that exceeds nine times New York's

maximum enforceable interest rate[,]" (*see id.* ¶ 58; *see also id.* ¶¶ 70–109).  Plaintiffs also

allege that EBF fraudulently deducted an "origination fee" of $2200, as well as a $50 "wire

transfer fee" and a $395 "ACH program fee."  (*Id.* ¶¶ 110–21.)  EBF moves for dismissal of the

SAC in its entirety, and also requests that the Court impose sanctions upon Plaintiffs and

Plaintiffs' counsel.  (*See generally* EBF MTD Mem.; EBF Sanctions Mem.)  The Court

addresses each argument to the extent necessary to decide the instant Motions.

### 1.  Plaintiffs' RICO Allegations Under § 1962(c)

Under § 1962(c), it is "unlawful for any person employed by or associated with any

enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to

conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through

. . . collection of unlawful debt."  18 U.S.C. § 1962(c).  Section 1964(c) of "RICO creates a

private cause of action for 'any person injured in his business or property by reason of a violation

of section 1962' of RICO."  *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132,

139 (2d Cir. 2018) (quoting 18 U.S.C. § 1964(c)) (alteration omitted).  As the statutory language

suggests, "RICO offenses may be predicated on a single instance of collection of unlawful debt

. . . ."  *United States v. Grote*, 961 F.3d 105, 119 (2d Cir. 2020).

"To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18

U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the

violation of Section 1962."  *Cruz v. FX DirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013)

(quoting *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001)).  "To plead a violation of Section

1962, a complaint must allege that the defendant engaged in (1) conduct (2) of an enterprise (3)

through . . . collection of an unlawful debt."  *Lateral Recovery, LLC v. Capital Merchant Servs.,*

*LLC*, —F. Supp. 3d—, 2022 WL 4815615, at *31 (S.D.N.Y. Sept. 30, 2022); 18 U.S.C.

11

§ 1962(c).  Because RICO "contemplate[s] that a person violates the statute by conducting an enterprise through a pattern of criminality," *Cruz*, 720 F.3d at 120 (emphasis omitted), a plaintiff must also plead "the existence of two distinct entities: (a) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name," *U1IT4Less, Inc. v. Fedex Corp.*, 871 F.3d 199, 205 (2d Cir. 2017) (quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)).

The Parties primarily disagree as to whether Plaintiffs have adequately pleaded a predicate RICO violation: the collection of an unlawful debt.  (*See generally* EBF MTD Mem; Pls' MTD Mem.)  An "unlawful debt" for the purposes of RICO means, in relevant part:

> a debt (A) . . . which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with . . . the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

18 U.S.C. § 1961(6).  Although violation of the unlawful-debt-collection provision of RICO "may be predicated on a single instance of collection of unlawful debt," *Grote*, 961 F.3d at 119, RICO "does not reach the collection of a loan that is made occasionally and not as part of the 'business of lending money' at a usurious rate," *see Fleetwood Services, LLC v. Ram Capital Funding*, LLC, No. 20-CV-5120, 2022 WL 1997207, at *18 (S.D.N.Y. June 6, 2022).  "That is, '[t]he first part of § 1961(6) requires that 'unlawful debt' either (1) be incurred or contracted in some form of illegal gambling activity or (2) be enforceable by virtue of state or federal usury laws.  The second part—subsection (B)—further narrows the definition, requiring, inter alia, that the 'unlawful debt' be incurred in connection with an illegal 'business.'"  *Id*. at *18 (italics omitted) (quoting *United States v. Persico*, No. 10-CR-147, 2011 WL 2433728, at *2 (E.D.N.Y.

June 14, 2011)); *see also Durante Bros. & Sons v. Flushing Nat'l Bank*, 755 F.2d 239, 250 (2d Cir. 1985).

"[T]o prove that what was collected was an unlawful debt within the meaning of RICO, [a plaintiff] would have to show that [1] the debt was unenforceable in whole or in part because of state or federal laws relating to usury, [2] the debt was incurred in connection with 'the business of lending money . . . at a [usurious] rate,' and [3] the usurious rate was at least twice the enforceable rate." *Durante Bros.*, 755 F.2d at 248; *see also Dae Hyuk Kwon v. Santander Consumer USA*, 742 F. App'x 537, 539 (2d Cir. 2018) (summary order). "Under New York law, a loan is criminally usurious if it has an annual interest rate exceeding 25%, N.Y. Pen. L. § 190.40, and such a usurious loan is void and unenforceable[.]" *Fleetwood*, 2022 WL 1997207, at *20. However, under New York law, "[i]f the transaction is not a loan, 'there can be no usury, however unconscionable the contract may be.'" *Seidel v. 18 E. 17th Street Owners, Inc.*, 598 N.E.2d 7, 11–12 (N.Y. 1992) (quoting *Orvis v. Curtiss*, 52 N.E. 690, 691 (N.Y. 1899)).

Defendant's primary argument against Plaintiffs' RICO allegations is based in the "law of the case" doctrine, where because "the Court . . . already rejected [Plaintiffs' usury-based claims against the 2021 Funding Agreement] based on the same allegations," Plaintiffs' claims must fail. (EBF MTD Mem. 8–9.) "The law of the case doctrine commands that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'" *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)). But where, as here, a plaintiff has filed an amended complaint following an earlier ruling, the law of the case doctrine does not apply "to the extent that [the p]laintiff has offered new claims or factual allegations." *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 316–17

(S.D.N.Y. 2015), *aff'd*, 626 F. App'x 20 (2d Cir. 2015) (summary order) (collecting cases). Indeed, a court cannot be said to have "ruled on" an issue if the issue is presented for the first time in an amended complaint. *Johnson*, 564 F.3d at 99.  Here, Plaintiffs have included several new factual allegations in the SAC, including introducing the 2019 Funding Agreement, (SAC ¶ 21; *see also* Funding Agreement 2), as well as various emails Plaintiffs allegedly received to solicit Plaintiffs into entering additional funding agreements, (SAC ¶ 22).  Moreover, Plaintiffs' SAC puts forth an entirely different cause of action, now alleging violations of RICO rather than state law claims for contract recission and declaratory relief.  (*Compare* FAC, *with* SAC.)  As such, to the extent that Plaintiffs have offered new claims and/or factual allegations that arguably address the deficiencies the Court previously identified, the Court will consider those claims anew.  *See Weslowski*, 96 F. Supp. 3d at 316–17 ("[T]o the extent that Plaintiff[s] ha[ve] offered new claims or factual allegations that arguably address the deficiencies the Court previously identified, the Court will consider those anew."); *Kregler v. City of N.Y.*, 821 F. Supp. 2d 651, 658–59 (S.D.N.Y. 2011) (finding law of the case doctrine inapplicable because the plaintiff made new factual allegations and advanced a new central theory of liability).

However, Defendant is right to point out the similarities between the FAC and the SAC. Indeed, the Court agrees with Defendant that one aspect of the FAC has not—and could not— change in the SAC: the text of the 2021 Funding Agreement itself.  In this Court's previous Opinion, the Court spilled significant ink upon the merits of Plaintiffs' usury-based claims, ultimately finding that "it is clear that the [2021] Funding Agreement is not a loan because Defendant is not absolutely entitled to repayment under all circumstances." *Streamlined Consultants, Inc. v. EBF Holdings LLC*, No. 21-CV-9528, 2022 WL 4368114, at *4 (S.D.N.Y. Sept. 20, 2022).  As outlined previously, "[t]he rudimentary element of usury is the existence of

a loan or forbearance." *Colonial Funding Network, Inc. v. TVT Cap., LLC v. Epazz, Inc.*, 252 F. Supp. 3d 274, 280 (S.D.N.Y. 2017) (quoting *Feinberg v. Old Vestal Rd. Assocs.*, 550 N.Y.S.2d 482, 483 (App. Div. 1990)).  "If the transaction is not a loan, 'there can be no usury, however unconscionable the contract may be.'"  *Id*. (quoting *Seidel*, 598 N.E.2d at 11–12); *see also Principis Cap., LLC v. I Do, Inc.*, 160 N.Y.S.3d 325, 326 (App. Div. 2022) ("The rudimentary element of usury is the existence of a loan or forbearance of money, and where there is no loan, there can be no usury, however unconscionable the contract may be." (citation omitted)).

The Court will not again explain why the 2021 Funding Agreement is not a loan, let alone a usurious loan, as Plaintiffs appear to concede this point.  Indeed, Plaintiffs state that "the FAC simply addressed whether the terms and conditions of the Agreement purport[] to be a loan or funding-based agreement," which this Court has extensively answered.  (*See* Pls' MTD Mem. 4.)  However, Plaintiffs continue to claim that this "is only one aspect to the case," because "if the debt was obtained by means of material misrepresentation, which is the basis of the SAC, then the debt is no longer lawful."  (*Id*. at 4–5.)  This is incorrect.

As relevant, an "unlawful debt" for the purposes of RICO means "a debt . . . which is unenforceable under State or Federal law *in whole or in part as to principal or interest because of the laws relating to usury . . . .*"  18 U.S.C. § 1961(6) (emphasis added).  That is, for an unlawful debt to be actionable under RICO, the debt must be "usurious" in whole or in part.  Without that aspect, a plaintiff cannot state a claim based a purported unlawful debt.  As the Court previously found, the 2021 Funding Agreement is not a usurious loan.  *See Streamlined Consultants Inc.*, 2022 WL 4368114, at *4–5.  As such, Plaintiffs cannot plausibly state a RICO claim based upon this debt, as it is entirely lawful.

Plaintiffs attempt to skirt past this Court's previous analysis of the 2021 Funding Agreement by alleging a series of untoward business practices by EBF, including allegations that EBF induced Plaintiffs into the 2019 and 2021 Funding Agreements through various solicitation emails, (*see* SAC ¶ 22), stating that EBF "disguise[es]" the true value of the Funding Agreement through unlawful fees, (*see id.* ¶ 94), and other allegations that resulted in Defendants "improperly collect[ing] criminally usurious loan payments," (*see id.* ¶ 92).   However, Plaintiffs allegations—including any new allegations regarding EBF's alleged business practices— necessarily must include allegations that the 2021 Funding Agreement is indeed usurious, as required by RICO.  *See, e.g.*, *Durante Bros.*, 755 F.2d at 248 (requiring a plaintiff to show that "the debt was unenforceable in whole or in part because of state or federal laws relating to usury" in order "to prove that what was collected was an unlawful debt within the meaning of RICO").  Moreover, the single case cited by Plaintiffs, *United States v. Moseley*, 980 F.3d 9 (2d Cir. 2020), is unhelpful.  Plaintiffs rely upon *Moseley* for the proposition that "charging fraudulent fees can be usury and pursued under RICO."  (Pls' MTD Mem. 5.)  However, *Moseley* did not address the question of whether an unlawful debt itself existed, but only addressed a jurisdictional challenge, whether the laws of New York would govern the usury inquiry as opposed to a different state or country.  980 F.3d at 17–24.  Here, the question is whether there exists a usurious loan *at all* under the agreed upon laws of New York.  And, as discussed at length, the Court already found that the 2021 Funding Agreement was not a usurious loan.

In the alternative, Plaintiffs appear to plead a pattern of racketeering activity through wire fraud as another RICO theory.  (SAC ¶ 96 ("Defendants have engaged in two or more illegal loans, specifically with Plaintiff[s], wherein they loaned money to [Plaintiffs] to pay off a prior

illegal loan. As such, a loan for $80,000 has become a loan for nearly $200,000.").) However, this too, by Plaintiff's own terms, is predicated upon an agreement that the Court has already found is not "criminally usurious." (*See* Pls' MTD Mem. 6–7 (pointing to allegations describing the "phony MCA" that uses language that "is intentionally included to mislead the courts and allow Defendant to loan money to corporations at a criminally usurious interest rate under the guise of a sales contract").) And, to the extent that Plaintiffs intend to assert that the 2019 Funding Agreement is also criminally usurious, this too fails as Plaintiffs have wholly failed to plead this claim beyond conclusory statements. For example, Plaintiffs reference the 2019 Funding Agreement sparsely throughout the SAC, noting that Plaintiffs "entered into a separate loan with Defendant," (SAC ¶ 21), and discussing its relationship with the subsequent Funding Agreement, (*see id.* ¶¶ 24, 33 (describing a "condition" of the subsequent loan as to "pay off Plaintiffs previous balance")), but only mention in a singular passing phrase that the 2019 Funding Agreement is an "illegal loan," (*id.* ¶ 96). As such, Plaintiffs have failed to plead a pattern of racketeering activity by not listing plausible allegations of racketeering, in addition to several other deficiencies the Court need not address at this time.[4]

---

[4] The Court must note, however, that the two Funding Agreements contain differences that may have been material. For example, this Court found that the 2021 Funding Agreement has a mandatory reconciliation provision if requested by SCI. *Streamlined Consultants, Inc.*, 2022 WL 4368114, at *4. However, the 2019 Funding Agreement does not have this same provision. (*Compare* Funding Agreement 1, at 2, *with* Funding Agreement 2, at 2.) This on its own does not mean that the 2019 Funding Agreement is usurious, and indeed Plaintiffs would have been required to plead much more to potentially establish this claim. For example, in both the FAC and the SAC, Plaintiffs have never alleged that they ever even *requested* reconciliation or otherwise alleged that reconciliation did not function as outlined in the Agreements. (*See generally* FAC; SAC.) *See also Pirs Cap., LLC v. D&M Truck, Tire & Trailer Repair Inc.*, 129 N.Y.S.3d 734, 739–40 (Sup. Ct. 2020) (finding, on summary judgment, that the plaintiff could not demonstrate that an agreement was a usurious loan because the agreement "contains a reconciliation provision" and while the defendants "assert[ed] that no reconciliation ever occurred, and thus that the reconciliation provision was simply a sham to hide a usurious loan," the defendants could not demonstrate that they "ever requested an adjustment of the amounts

Accordingly, the Court grants Defendants' motion to dismiss with respect to § 1962(c) claim.

### 2.  Plaintiffs' RICO Allegations under § 1962(d)

Plaintiffs also raise a RICO conspiracy claim under 18 U.S.C. § 1962(d).  (*See* SAC ¶¶ 100–09.)  "To establish a conspiracy to violate the civil RICO statute pursuant to 18 U.S.C. § 1962(d) . . . [a] plaintiff must prove (1) that there existed a conspiracy to commit acts that, if successful, would constitute a substantive civil RICO violation; (2) that [the] defendant agreed to join in, and knowingly participated in, that conspiracy; and (3) that [the] defendant acted in furtherance of the conspiracy in some manner (although not necessarily by the commission of any RICO predicate acts himself)."  *Martin Hilti Fam. Tr. v. Knoedler Gallery, LLC*, 386 F. Supp. 3d 319, 340 (S.D.N.Y. 2019) (citation and quotation marks omitted).  A defendant must have agreed to participate "in a charged enterprise's affairs through a pattern of racketeering, not [simply] a conspiracy to commit predicate acts."  *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 409 (S.D.N.Y. 2015) (quotation marks omitted) (quoting *United States v. Pizzonia*, 577 F.3d 455, 463 (2d Cir. 2009)); *see also Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 487  (2d Cir. 2014) ("To establish a violation of § 1962(c), a plaintiff must show that the defendant conducted, or participated in the conduct[] of[,] a RICO enterprise's affairs through a pattern of racketeering activity.").  Because Plaintiffs have not plausibly stated a substantive RICO claim under § 1962(c), Plaintiffs' conspiracy claim must also fail.  *See Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996) ("Since we have held that the prior

---

being collected in order to account for the actual amount of [their] daily receivables" (emphasis in original)).

However, as Plaintiffs failed to allege or argue any claims based upon the illegality of the 2019 Funding Agreement, the Court declines to address this issue in full.

18

claims do not state a cause of action for substantive violations of RICO, the present claim does not set forth a conspiracy to commit such violations."), *vacated on other grounds*, 525 U.S. 128 (1998).

Accordingly, Plaintiffs' allegations of RICO conspiracy are dismissed.

### 3.  Fraud

Plaintiffs also allege that EBF deducted fraudulent "fees" such as the origination fee, a wire transfer fee, and an ACH program fee.  (*See* SAC ¶¶ 110–21.)  "Under New York law, the five elements of fraud are (1) a material misrepresentation or omission of fact (2) made by [a] defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC, 13 F.4th 247, 259 (2d Cir. 2021) (quotation marks omitted); *see also Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 784 (2d Cir. 2003) ("To succeed on a theory of fraudulent misrepresentation under New York law, a plaintiff must show that the defendant made a false representation of a material fact to the plaintiff and that the plaintiff suffered injury as a result of justifiable reliance upon that fact.").

Plaintiffs allege that the origination fee of $2200 "was fraudulent as it was simply a ploy to extract additional funds from the Plaintiffs and did not actually comprise of related expenses pertaining to origination," arguing that "[n]one of these fees had any relationship to any services actually rendered and instead were disguised interest charges."  (SAC ¶ 112.)  Defendant argues that "the fraud count is barred because it is [actually] a claim for affirmative relief based on allegations of usury."  (EBF MTD Mem. 18–20.)  The Court agrees with Defendant.

Plaintiffs' fraud claim fails for the simple reason that Plaintiffs have not alleged what EBF "fraudulently misrepresented" outside of Plaintiffs' ill-conceived usury claims.  For

example, through the SAC, Plaintiffs repeatedly make conclusory arguments as to the fact that the fees at issue had no "relationship to services actually rendered and instead were disguised interest charges" and consisted of "nothing more than additional profits reaped" by EBF.  (SAC ¶¶ 112, 115.)  However, Plaintiffs in their own words describe their allegations as a "cause of action [of] fraud to avoid and/or hide criminal usury."  (Pls' MTD Mem. 8.)  Plaintiffs allege that EBF "acted with malice in their attempt to cover up the true nature of the Agreement," and that Plaintiffs were induced to enter into "a loan with payments" rather than a Funding Agreement. (SAC ¶¶ 116, 119.)  At bottom, Plaintiffs fraud claim fails for the same reason their RICO claims failed: the Court has already ruled that the Funding Agreement was not a loan.  Plaintiffs attempt to parse this Court's previous Opinion, arguing that while the Court decided "whether the Agreement is a loan or a funding agreement based upon its terms and conditions[,]" Plaintiffs' new claim is whether "the intentions and representations made by [EBF] . . . in the Agreement" were fraudulent.  (Pls' MTD Mem. 9.)  However, this is a distinction without a basis.  The "intentions and representations" that Plaintiffs are relying upon in the SAC *are* the terms and conditions in the 2021 Funding Agreement.  (*See* SAC ¶¶ 110–21.)  And, as the Court has noted repeatedly throughout this Opinion, the Court has indeed ruled upon the terms and conditions of the 2021 Funding Agreement, stating that the Agreement is not a usurious loan.

As such, even taking Plaintiffs' allegations as true, EBF has not made any misrepresentation about the "true nature" of the Agreement; the Agreement is as it states in the text of the Agreement, absent nonconclusory evidence that the Agreement did not function in the way that the text provided.  Thus, any allegations—based in usury, fraud, or otherwise—cannot not stand.  Accordingly, Plaintiffs' fraud allegation is dismissed.

    4.  Motion for Sanctions

  EBF asks the Court to "order both Plaintiffs and their counsel to pay [EBF's] legal fees"
for both Motions before the Court.  (EBF Sanctions Mem. 3.)  Federal Rule of Civil Procedure
11, in relevant part, imposes a duty on every attorney to "certif[y] that to the best of the
[attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the
circumstances . . . the factual contentions have evidentiary support or, if specifically so
identified, will likely have evidentiary support after a reasonable opportunity for further
investigation or discovery."  FED. R. CIV. P. 11(b).  "The standard for triggering the award of
fees under Rule 11 is objective unreasonableness . . . ."  *Storey v. Cello Holdings*, *L.L.C.*, 347
F.3d 370, 387 (2d Cir. 2003) (citation, alteration, and quotation marks omitted).  The decision
whether to impose sanctions under Rule 11 "is . . . committed to the district court's discretion."
*Toussaint v. NY Dialysis Servs., Inc.*, 230 F. Supp. 3d 198, 222 (S.D.N.Y. 2017) (quoting *Perez
v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004)), *aff'd*, 706 F. App'x 44 (2d Cir. 2017).
"Courts maintain a high bar for establishing a Rule 11 violation given judicial concern for
encouraging zealous advocacy . . . ."  *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179
(S.D.N.Y. 2008); *Miller v. Annucci*, No. 17-CV-4698, 2019 WL 4688539, at *6 (S.D.N.Y. Sept.
26, 2019) (same); *see also Morana v. Park Hotels & Resorts, Inc.*, No. 20-CV-2797, 2022 WL
769327, at *11 (S.D.N.Y. Mar. 14, 2022) (noting that "the decision to impose sanctions should
be 'made with restraint'" (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334
(2d Cir. 1999))).

  EBF primarily argues that Plaintiffs and their counsel should be subject to Rule 11
sanctions because they raised frivolous legal arguments, which were foreclosed by this Court's
Opinion and Order dismissing the FAC.  (*See* EBF Sanctions Mem. 6–9.)  Indeed, "[p]resenting

again a pleading, written motion, or other paper that was adjudicated deficient, without substantially addressing legal deficiencies previously adjudicated, violates the duty to conduct a reasonable inquiry into law." *Adams v. N.Y.S. Educ. Dept.*, No. 08-CV-5996, 2010 WL 4970011, at *9 (S.D.N.Y. Dec. 8, 2010) (citations omitted) (collecting cases), *adopted as modified by* 855 F. Supp. 2d 205 (S.D.N.Y. 2012); *Polar Int'l Brokerage Corp. v. Reeve*, 196 F.R.D. 13, 17 (S.D.N.Y. 2000) (imposing Rule 11 sanctions sua sponte, finding that "[d]espite [the] [c]ourt's warning and clear legal precedent . . . plaintiffs included identically flawed allegations in their amended complaint"); *see also Dmitri Enters. Inc. v. Spar Ins. Agency LLC*, No. 21-CV-1722, 2022 WL 5237811, at *2 (2d Cir. Oct. 6, 2022) (summary order) (stating that the Second Circuit has "upheld sanctions where an attorney or litigant may have initially filed a non-frivolous claim but, after the district court's dismissal of that claim, re-filed a similar or identical claim in an amended pleading without any good-faith basis for overcoming the district court's prior ruling" (collecting cases)).

In this Court's previous Opinion, the Court admonished Plaintiffs for bringing claims that were clearly inaccurate upon reading the underlying documents provided by Plaintiffs.  (*See* Op. at 2 n.2.)  Specifically, the Court "remind[ed] Plaintiffs' counsel of his Rule 11 obligations" and warned Plaintiffs that "[v]iolation of this provision is grounds for sanctions."  (*Id.*)  The Court granted Defendant's Motion to Dismiss in its previous Opinion, for several reasons, including that Plaintiffs were categorically precluded from suing for affirmative relief based on allegations of usury under New York law.  (*Id.* 8–10.)  Nevertheless, the Court also went into painstaking detail, outlining the numerous ways that the 2021 Agreement was not a usurious loan, and emphasized that any claim based upon this usury theory would "fail as a matter of law."  (*Id.* 10– 14.)  Similar to this Court's decision regarding the SAC, the Court dismissed Plaintiffs'

remaining claims, as they "depend[ed] on their claim that the [2021] Funding Agreement is criminally usurious," which the Court had just rejected.  (*Id*. at 15.)  Finally, the Court did offer the Plaintiffs an opportunity to amend their complaint, but only "[t]o the extent Plaintiffs have a good faith basis for filing a second amended complaint."  (*Id*. at 17.)

Plaintiffs elected to amend their complaint on October 20, 2022.  (*See* SAC.)  Shortly thereafter, EBF filed a pre-motion letter regarding an anticipated motion to dismiss, stating that Plaintiffs' counsel included knowingly misleading and factually inaccurate allegations regarding the connection between the 2019 and 2021 Funding Agreements, and noting that the "usury" allegations in the SAC "are not materially different from those that the Court rejected when it dismissed the FAC and hence that the inclusion of those allegations in the SAC is contrary to controlling law."  (Dkt. No. 19.)  In response, Plaintiffs' counsel stated that EBF's letter "demonstrates a poor understanding of basic law," requested that "Defendant['s] counsel should respectfully reflect the statements averred in [the] letter, and the irresponsible use of Rule 11," and stated that this is merely a "contention of facts."  (Dkt. No. 23.)

However, as repeatedly noted throughout this Opinion, Plaintiffs and their counsel are not just providing a "contention of facts," they chose to amend the FAC to repeat *verbatim* numerous allegations that the Court already ruled were incorrect as a matter of law.  While Plaintiffs argue that the FAC "simply addressed whether the terms and conditions of the Agreement purports to be a loan or funding-based agreement," this wholly misunderstands the purpose of Rule 11 sanctions in this case.  (*See* Pl's Sanctions Mem. 5.)  The Court already ruled that the Agreement underlying all claims that Plaintiffs have brought before this Court, in the original Complaint, the FAC, and the SAC, is *not* criminally usurious.  As such, Plaintiffs' citation to other cases in which usurious loans did indeed violate RICO is woefully misplaced: there is no usurious loan in

this case, as the Court explicitly ruled in granting the first Motion to Dismiss.  (*See* Pls'
Sanctions Mem. 5–6.)  Plaintiffs and their counsel knew this, and the Court stated as such in its
Opinion.  And yet, Plaintiffs through their counsel chose to amend their complaint to include
patently frivolous and damaging RICO claims.

District courts within the Second Circuit have imposed sanctions where a party persists in
raising previously rejected claims or defenses.  *See, e.g., Dimitri Enterprises, Inc. v. Scottsdale
Ins. Co.*, No. 20-CV-7966, 2021 WL 2650508, at *2 (S.D.N.Y. June 24, 2021) (imposing
sanctions where the "plaintiff's counsel filed the same defective claims against a new defendant"
because "[s]uch claims were not made in good faith after reasonable inquiry"); *Commer v. Am.
Fed'n of State, Cty. & Mun. Emps.*, No. 01-CV-4260, 2003 WL 22671546, at *1 (S.D.N.Y. Nov.
12, 2003) (imposing sanctions where the plaintiff continued to assert a claim after the court
warned him that doing so could result in sanctions); *Kirschner v. Zoning Bd. of Appeals of Inc.
Vill. of Valley Stream*, 159 F.R.D. 391, 398 (E.D.N.Y. 1995) (imposing sanctions where the
plaintiff's "pleading was presented for an improper purpose, namely to cause unnecessary delay
or needless increase in the cost of litigation"); *Knipe v. United States*, 151 F.R.D. 24, 25
(N.D.N.Y. 1993) (finding that the "plaintiffs' counsel's unfailing persistence in pursuing [certain]
frivolous arguments alone warrants sanctions under Rule 11").

Importantly, "[a]s numerous courts in this Circuit have recognized, Rule 11 is particularly
significant in the civil RICO context because commencement of a civil RICO action has an
almost inevitably stigmatizing effect on those named as defendants."  *Edmonds v. Seavey*, No.
08-CV-5646, 2009 WL 4404815, at *3 (S.D.N.Y. Dec. 2, 2009) (quotation marks omitted), *aff'd*,
113 F.3d 1229 (2d Cir. 1997).  This reflects the recognition that civil RICO is an "unusually
potent weapon," and often referred to as the "litigation equivalent of a thermonuclear device."

24

*See, e.g.*, *Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 449 (S.D.N.Y. 2007); *Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 163 (S.D.N.Y. 2003); *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. June 25, 1996) (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991)).  Thus, courts have not hesitated to impose sanctions under Rule 11 when RICO claims have been found to be frivolous.  *See, e.g.*, *Edmonds*, 2009 WL 440815, at *3 (citing *Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 02-CV-2561, 2003 WL 22227956, at *13–14 (S.D.N.Y. Sept. 26, 2003) (admonishing plaintiff's counsel for frivolous RICO claim)); *see also, e.g., O'Malley v. N.Y.C. Transit Auth.*, 896 F.2d 704, 709 (2d Cir. 1990) (remanding for imposition of sanctions where a plaintiff "failed to allege even one act that could qualify as racketeering activity under RICO"); *Katzman*, 167 F.R.D. at 660 (finding a Rule 11 violation where "even a cursory examination of the requirements for bringing suit under RICO would have revealed the impossibility of the claim's success"); *McLoughlin v. Altman*, No. 92-CV-8106, 1995 WL 640770, at *2 (S.D.N.Y. Oct. 31, 1995) (finding a Rule 11 violation where a plaintiff failed "to properly plead a single element of a sustainable RICO claim . . . [which] manifest[ed] a total lack of legal research and preparation on the part of [the] plaintiff's attorney"); *Levy v. Aaron Faber, Inc.*, 148 F.R.D. 114, 123 (S.D.N.Y. 1993) (imposing Rule 11 sanctions where "even a cursory investigation into the pleading requirements for RICO would have revealed the inadequacy of [the] [plaintiff's] RICO pleading").

In addition, EBF alleges that there are numerous "facts known to Plaintiffs" that "show that allegations in the Complaint are false."  (EBF Sanctions Mem. 9.)  Specifically, Defendant argues that Plaintiffs: (1) falsely alleged that EBF "forc[ed]" Plaintiffs to pay off their 2019 Funding Agreement with the Funds from the 2021 Agreement, (*id*. at 10–11), and (2) falsely

alleged that Plaintiffs paid "thousands of dollars of unlawful debt[,]" (*id*. at 11).  According to

long-standing precedent in the Second Circuit, "blatant disregard of the facts amply warrant[] the

imposition of sanctions."  *Levine v. F.D.I.C.*, 2 F.3d 476, 479 (2d Cir. 1993).  "[T]he creativity of

an attorney may not transcend the facts of a given case[.]"  *Id*.; *accord In re Kelly*, 808 F.2d 549,

551 (7th Cir. 1986) (when an attorney "chose to state as a fact what was at the best a guess and a

hope, he engaged in misrepresentation").  Plaintiffs allege in several parts of the SAC that "[a]s a

condition of the [2021 Funding Agreement,] Plaintiff[s] w[ere] required to pay off the balance of

the previous loan with a portion of the proceeds from the Agreement."  (SAC ¶ 24; *see also id*. ¶

96 ("Defendants have engaged in two or more illegal loans, specifically with Plaintiff[s],

wherein they loaned money to [Plaintiffs] to pay off a prior illegal loan.  As such, a loan for

$80,000 has become a loan for nearly $200,000."); *id*. ¶ 33 ("[T]he loan at issue was used in part

to pay off the Plaintiff[s'] previous loan.  The previous loan balance was automatically paid off

from the loan proceeds as part of the conditions of the current loan."); *id*. at ¶ 34 ("The terms of

the current loan show a conspiracy among the Defendants to violate RICO and to defraud

Plaintiffs by forcing them through misleading terminology and by forcing Plaintiffs to use

proceeds from the loan to pay off their previous balance.").)  However, EBF notes that, "[t]he

most basic factual investigation would have enabled Plaintiffs to avoid this material

misstatement of facts."  (EBF Sanctions Mem. 10.)

 While Plaintiffs are correct that there is an addendum to the 2021 Funding Agreement

that is titled "Payoff of Existing Advance," (*see* Funding Agreement 1 at 16), EBF points out that

the amount purportedly due to EBF to effectuate the "payoff" is "$0.00," (*see id*. (column named

"paid directly to Everest Business"); EBF Sanctions Mem. 10–11.  As stated by EBF, "[t]he

addendum includes deductions for fees for the 2021 Agreement but unmistakably lacks any

payoff for the previous agreement, directly contradicting the SAC." (EBF Sanctions Mem. at 11.) However, the most damning evidence of Plaintiffs' falsehoods is found in EBF's payment records recording Plaintiffs' payments under both agreements. According to EBF's records, Plaintiffs "completed [their] obligations and finished paying its debts [under the 2019 Funding Agreement] on May 18, 2020[.]" (Reyes Decl. ¶ 4; *see also* Reyes Decl. Ex. A at 2 (showing a final payment on May 18, 2020 and a balance due of "$0.00").) As such, Plaintiffs *know* that they paid off any existing debt on the 2019 Funding Agreement *over a year prior* to signing the 2021 Funding Agreement on May 21, 2021. (*See* Reyes Decl. ¶¶ 4–5.)

Plaintiffs argue that this pleading is "merely a showing of [a] dispute of facts that requires discovery" because "[t]he timing of when Plaintiff[s] paid off the first loan originated in 2019, paid extremely early on 2020, and the small gap between the new loan are simply circumstantial evidence that does not wholly disprove a link between paying off the previous debt to incurring new debt." (Pls' Sanctions Mem. 8.) This argument is frankly nonsensical, and a classic example of a blatant disregard of facts. The fact of the matter is that Plaintiffs knew prior to filing the SAC that the two agreements could not—and were not—linked. The 2019 Funding Agreement was paid in full without any existing obligation at the time that Plaintiffs entered into the 2021 Funding Agreement. As such, Plaintiffs' allegation that "Defendants have engaged in two or more illegal loans, specifically with Plaintiffs, wherein they loaned money to [Plaintiffs] to pay off a prior illegal loan" is categorically false, and Plaintiffs knew it because there was no existing obligation. (SAC ¶ 96.) "[B]y making factual contentions to the Court that are completely unsupported by the evidence, the Plaintiff[s] did indeed violate Rule 11(b)(3) and should be sanctioned accordingly." *Gowanus Indus. Park, Inc. v. Arthur H. Sulzer Assocs., Inc.*, No. 06-CV-105, 2008 WL 877203, at *8 (E.D.N.Y. Apr. 1, 2008).

In sum, "Rule 11 targets situations" such as this one, "where it is patently clear that a claim has absolutely no chance of success." *New V & J Produce Corp. v. NYCCaterers Inc.*, No. 13-CV-4861 2014 WL 5026157, at *7 (S.D.N.Y. Sept. 29, 2014) (quoting *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991)); *see also Immerso v. U.S. Dep't of Lab.*, No. 19-CV-3777, 2021 WL 3185531, at *6 (E.D.N.Y. July 28, 2021) (imposing sanctions where the court "repeatedly warned [the sanctioned parties] that it considered their conduct in this action to be sanctionable, and it has provided [those parties] an opportunity to be heard on the subject of sanctions"). Accordingly, the Court finds that imposing sanctions on Plaintiffs and Plaintiffs' counsel is appropriate in this case.

## III. Conclusion

For the foregoing reasons, EBF's Motion to Dismiss is granted. Because this is the second adjudication of Plaintiffs' claims, the claims are dismissed with prejudice. The Clerk of the Court is directed to terminate the pending motions, (*see* Dkt. No. 29, 32), and close the case.

Also, for the foregoing reasons, EBF's Motion for Sanctions is granted. EBF's counsel is directed to submit the following to the Court within 30 days of the date of this Opinion and Order: (1) a memorandum of law discussing a request for reasonable attorneys' fees and (2) a declaration outlining attorneys' fees expended in the instant Action.

SO ORDERED.

Dated:    September 8, 2023
          White Plains, New York

_____
        KENNETH M. KARAS
        United States District Judge